690 P.2d 158

Robert NASTRI and Barbara Nastri, husband and wife, Plaintiffs/Appellants,

v.

WOOD BROS. HOMES, INC., an Arizona corporation, Defendant/Appellee.

No. 2 CA–CIV 5035.

Court of Appeals of Arizona, Division 2.

Oct. 16, 1984.

Dennis A. Rosen, Tucson, for plaintiffs/appellants.

Stinson & Douglas, P.A. by William H. Douglas, Phoenix, for defendant/appellee.

OPINION

BIRDSALL, Chief Judge.

This appeal arises out of a summary judgment entered by the trial court dis-

missing the appellants' complaint against the appellee, Wood Bros. Homes, Inc. The appellants, Robert and Barbara Nastri, husband and wife, are the second purchasers of a home constructed by the appellee. Their claim for relief, set forth in multiple counts in the complaint, alleges that latent defects in the construction have caused severe damage to the home. The only issues raised on appeal concern the dismissal of their counts in strict liability, negligence, and the implied warranty of construction in a workmanlike manner and habitability. They do not dispute the summary disposition of their counts in fraud, false advertising, conspiracy to defraud, and consumer fraud.

The trial court did not have the benefit of our supreme court's decision in *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427 (1984), and undoubtedly based its decision, in part at least, on the fact that the appellants were not the first purchasers of the home. In *Richards* the court held that privity of contract with the builder was not a prerequisite for an action arising out of an implied warranty that construction has been done in a workmanlike manner and that the structure is habitable.

The residence was constructed by the appellee as part of a tract development of 42 lots in a subdivision. The previous owner had subdivided the raw land for development, but had done no grading, planting, digging, or movement of soil. It had secured an engineering soil report which it delivered to the appellee. The report contained the following language:

> Because of the *extremely collapsible nature of the surface soil* it will be necessary to water, scarify and re-compact the surface soil to a depth of 18 inches below the existing ground surface, or to the "caliche" layer, whichever applied. (emphasis added)

The home was sold to Mr. and Mrs. Ernest E. Gurule by written purchase contract dated February 20, 1978. They sold it to the appellants in March 1980. The complaint was filed December 4, 1981. The Gurule-Wood Bros. contract contained the following provision:

10. THE IMPROVEMENTS CONSTRUCTED ARE COVERED BY LIMITED WARRANTIES AS FOLLOWS: ALL LABOR HAS BEEN PERFORMED IN A GOOD AND WORKMANLIKE MANNER IN COMPLIANCE WITH THE APPLICABLE BUILDING CODE AND, WHEN APPLICABLE, FHA OR VA STANDARDS. SELLER WILL MAKE REPAIRS AND/OR REPLACEMENTS DUE TO DEFECTIVE MATERIALS OR WORKMANSHIP, IF NOTICE OF SUCH IS GIVEN IN WRITING TO SELLER WITHIN ONE (1) YEAR FROM THE DATE OF OCCUPANCY BY PURCHASERS. THE WARRANTIES HEREIN SHALL NOT APPLY TO DAMAGES OR DEFECTS AS A RESULT OF ORDINARY WEAR AND TEAR, NATURAL DISASTER, CHANGES MADE TO GRADE ELEVATION OR STRUCTURE BY PURCHASERS, OR ANY NEGLIGENT ACTS OF PURCHASERS. NO OTHER WARRANTIES, EXPRESS OR IMPLIED, ARE GIVEN, INCLUDING, BUT NOT LIMITED TO, A WARRANTY OF FITNESS FOR HABITATION, QUALITY OR CONDITIONS, EXCEPT AS EXPRESSLY GIVEN HEREIN. THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE CLOSING AND TRANSFER OF TITLE. Warranty to extend for a period of 2 years.

Sometime after the appellants occupied the home, they observed problems which they described in deposition testimony as:

1. Crack in the kitchen floor going through the pantry, all the way through the kitchen floors down the middle. The crack is 12 feet [sic] by 20 feet.

2. A difference in elevation around the crack between one side of the kitchen floor and the other side of the kitchen floor.

3. Crack in the family room that exists from the edge of the foundation near the stem wall. The crack is ¼ of an inch.

4. Crack in the vinyl flooring.

5. Extensive crack in the fourth bedroom extending from the stem wall in the foundation, the length of the room and into the corner of the closet. The crack is $3/8$ inches wide all the way through. It goes all the way through to the ground. Ants are coming up underneath the padding of the carpeting below the house.

6. Buckling of the roof over the second and third bedrooms.

7. Joist cracked.

8. Pantry door cannot be locked (door does not fit due to movement). Front door is hard to lock for the same reason.

9. Cracks in the bricks through the archway in the front of the house (through the slump block as opposed to cracks in the mortar).

10. Widening of the wall crack in the family room next to the fireplace where Wood Bros. attempted repairs. Crack in the ceiling of the kitchen.

11. Cracks in the entryway that go along the wall and interior wall on through to the family room, cracks on the outside in the bricks of the fourth bedroom, $3/8$ inch crack extending into the kitchen from outside on the raised foundation where the house was built from the garage.

12. Crack in the cement pad.

13. Crack in kitchen causing separation of tile.

14. Cracks in drywall, prior cracking in sheet of linoleum floor which began as a split in the seam in the linoleum.

15. Crack in the drywall ceiling of the family room.

16. Separation between the brick and drywall near the fireplace.

By deposition the soils engineer testified that soil settling caused the cracking. An engineering firm employed by the appellants made the following statement in its report:

Based on the observed damage of the residences and results of field and laboratory investigations, it is concluded that the three residences were built on top of about 2 to 4 feet of moisture sensitive "collapsible" soil. Moisture infiltration due to landscape watering, ponding of rain water, and/or utility leaks are believed to have caused the settlement. It is probable that additional increases in soil moisture content would continue to cause foundation movement with resulting wall and floor slab cracking.[1]

We must consider the record presented to the trial court on the motion for summary judgment in the light most favorable to the appellants. *Hall v. Motorists Insurance Corp.*, 109 Ariz. 334, 509 P.2d 604 (1973). In that light it cannot be disputed that, at the very least, latent defects in the construction relating to the soil compaction and/or the foundation of the home caused damage to the structure.

Since we hold that the trial court judgment must be reversed, we must decide on which of the three remaining legal theories the case may be tried, i.e., implied warranty, negligence, and strict liability.

### Implied Warranty

■ Despite the *Richards* decision, the appellee presents two arguable reasons for affirming the judgment dismissing the count in implied warranty. First, the appellee contends that the disclaimer in the contract with the first purchaser, Gurule, negates the implied warranty claimed by the appellants. We do not agree. This argument was not presented in the trial court, probably because *Richards v. Powercraft*, which overruled previous Arizona law, had not been decided. Therefore no facts have been developed concerning the circumstances leading to the Gurule contract. It appears from an examination of the instrument that it was a contract of adhesion and for that reason might be unenforceable depending on the real agreement between the parties. *See Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d

---

1. There were originally three plaintiffs, all of whom purchased Wood Bros. homes in the sub- division and the expert's report covered all three.

388 (1984). *See also Petersen v. Hubschman Construction Co.*, 76 Ill.2d 31, 27 Ill.Dec. 746, 389 N.E.2d 1154 (1979) (disclaimer strictly construed against builder).

Further, there is authority holding that an express warranty for a limited time cannot displace the implied warranty of habitability in a case involving latent defects. In *Tassan v. United Development Co.*, 88 Ill.App.3d 581, 43 Ill.Dec. 769, 410 N.E.2d 902 (1980), a group of condominium owners sued the builder-developer because major systems such as central heating and plumbing were faulty. The sales contract had an express warranty limiting repairs to one year. The court held that even a conspicuous clause disclaiming liability may not be enough to show, in fact, such disclaimer was part of the agreement reached and that the buyer understood the consequences of such a waiver in relation to latent defects. In addition, the Illinois court also considered the builder's defense that the express warranty covering the same subject matter as the implied warranty rendered the implied warranty non-actionable. The court stated:

> Latent defects in a new home or a new condominium may well not be discovered until after the first year a buyer takes possession. To allow a one year express warranty to entirely displace an implied warranty of habitability could have the effect of allowing a seller to disclaim the implied warranty without forcing him to prove that there was a knowing acceptance of such disclaimer on the part of the buyer. All a seller would need to do is to provide an express warranty in the written contract covering all defects for a period of one year, six months, or even a month. Thus, the seller could preclude any liability for latent defects without the buyer knowing that such liability has been precluded. 410 N.E.2d at 910.

*See also Terlinde v. Neely*, 275 S.C. 395, 271 S.E.2d 768 (1980), where the builder paid a sum of money to the original buyer to correct damages caused by the settlement of the house and received a release. The South Carolina Supreme Court nevertheless permitted an action of a subsequent purchaser to proceed on breach of implied warranty and negligence.

We are not called upon to decide any dispute between the original purchaser and Wood Bros. Nor can we affirm the summary judgment against the appellants on this theory, which is presented for the first time on appeal, since the appellants have had no opportunity to develop controverting facts in the trial court. *See Rhoads v. Harvey Publications, Inc.*, 131 Ariz. 267, 640 P.2d 198 (App.1981). Nevertheless because there are questions of law which will arise in the trial of this case arising from facts which are before us, we believe we should proceed to decide whether the disclaimer and express warranty provision in the Gurule contract precludes this implied warranty action by the second owner. We hold that it does not.

The guiding principle of *Richards v. Powercraft* is that innocent purchasers should be protected and builders held accountable for their work. To permit the builder to disclaim a warranty protecting a purchaser from the consequences of latent defects would defeat this principle. We believe it would be against public policy in Arizona as expressed in *Powercraft. See also Dillig v. Fisher*, 142 Ariz. 47, 688 P.2d 693 (1984) and *Columbia Western Corp. v. Vela*, 122 Ariz. 28, 592 P.2d 1294 (App.1979). A state's public policy is found in its constitution, legislative acts, and when the legislature has not spoken, in its judicial decisions. *Higgins v. Nationwide Mutual Insurance Co.*, 50 Ala.App. 691, 282 So.2d 295 (1973); *Craemer v. Superior Court In and For Marin County*, 265 Cal.App.2d 216, 71 Cal.Rptr. 193 (1968). In *Powercraft* our supreme court has spoken in an area not addressed by our legislature or in our constitution. To repeat, our supreme court has held that innocent purchasers are to be protected and builders are to be held accountable within the limitations enumerated in *Powercraft.* Indeed, in *Woodward v. Chirco Construction Co., Inc.*, 141 Ariz. 514, 687 P.2d 1269 (1984), our supreme court spoke of "the policy

considerations behind recognition of the warranty."

Our conclusion that an attempted disclaimer of the implied warranty of habitability is void as against public policy as to an innocent subsequent purchaser is supported by case law. In *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982), the Supreme Court of Illinois said:

The warranty of habitability is a creature of public policy. It is a judicial innovation that has evolved to protect purchasers of new houses upon discovery of latent defects in their homes. While the warranty of habitability has roots in the execution of the contract for sale, ... we emphasize that it exists independently.... Privity of contract is not required. Like the initial purchaser, the subsequent purchaser has little opportunity to inspect the construction methods used in building the home. Like the initial purchaser, the subsequent purchaser is usually not knowledgeable in construction practices and must, to a substantial degree, rely upon the expertise of the person who built the home. If construction of a new house is defective, its repair costs should be borne by the responsible builder-vendor who created the latent defect. The compelling public policies underlying the implied warranty of habitability should not be frustrated because of the short intervening ownership of the first purchaser; in these circumstances the implied warranty of habitability survives a change of hands in the ownership. 441 N.E.2d at 330. (citations omitted)

We do not decide in this case whether a knowing disclaimer of the implied warranty is void as against the public policy of Arizona. *See Peterson v. Hubschman Construction Co., supra; Belt v. Spencer*, 41 Colo.App. 227, 585 P.2d 922 (1978); and *Hoagland v. Celebrity Homes, Inc.*, 40 Colo.App. 215, 572 P.2d 493 (1977). That question is not presented here.

The appellee's second reason for precluding this action by a subsequent purchaser despite the *Richards* decision is unpersuasive. It contends that since the residence may not be "structurally unsound," as evidenced in part by the fact the Nastris are living in it, it is not uninhabitable. Two cases from other jurisdictions are cited in support of this contention. The first, *Goggin v. Fox Valley Construction Corp.*, 48 Ill.App.3d 103, 8 Ill.Dec. 271, 365 N.E.2d 509 (1977) contains the following holding:

The primary function of a new home is to shelter its inhabitants from the elements. If a new home does not keep out the elements because of a substantial defect of construction, such a home is not habitable within the meaning of the implied warranty of habitability.... Another function of a new home is to provide its inhabitants with a reasonably safe place to live, without fear of injury to person, health, safety, or property. If a new home is not structurally sound because of a substantial defect of construction, such a home is not habitable within the meaning of the implied warranty of habitability. If a new home is not aesthetically satisfying because of a defect of construction, such a defect should not be considered as making the home uninhabitable.... These are, in our opinion, the basic parameters of habitability. We might further add that we find no legal authority permitting us to extend the implied warranty in the sale of a new home beyond the accepted concept of habitability. 365 N.E.2d at 511. (citations omitted).

We do not agree with this strict standard and neither does the Supreme Court of Illinois. That court expressed its disagreement in *Petersen v. Hubschman Construction Co., supra.*

It [the warranty] is an implied covenant by the builder-vendor that the house which he contracts to build and to convey to the vendee is reasonably suitable for its intended use.

What we have just said evidences our disagreement with the narrow interpretation of the implied warranty of habitability urged by Hubschman and stated by

the appellate court in *Goggin*. The mere fact that the house is capable of being inhabited does not satisfy the implied warranty. The use of the term "habitability" is perhaps unfortunate. Because of its imprecise meaning it is susceptible of misconstruction. It would more accurately convey the meaning of the warranty as used in this context if it were to be phrased in language similar to that used in the Uniform Commercial Code, warranty of merchantability, or warranty of fitness for a particular purpose. 389 N.E.2d at 1158.

The second case relied upon by the appellee is *Banville v. Huckins*, 407 A.2d 294 (Me.1979). The case does not support the appellee's position that the home must be uninhabitable. The opinion first held that eight to ten inches of water periodically flooding the basement rendered the house uninhabitable, constituting a breach of the builder-vendor's implied warranty of habitability. The Maine court reasoned:

> Habitability is a term difficult of precise definition. Every minor defect in a new home does not necessarily make the structure uninhabitable. On the other hand, the warranty should not be defined in such strict terms as to require the defect to be of such magnitude as to require that the structure be deemed unlivable. Thus, we are required to look at each situation and to analyze the extent, or magnitude, of the defect and determine whether it resulted in unsuitability for habitation, as we suggested in *Wimmer*. Whether or not a particular defect renders the dwelling "unsuitable" necessarily requires inquiry as to whether a reasonable person faced with such a defect would be warranted in concluding that a major impediment to habitation existed. 407 A.2d at 297.

The reference to *Wimmer* is *Wimmer v. Down East Properties, Inc.*, 406 A.2d 88 (Me.1979). In *Wimmer* the court held that there are actually two warranties, one of workmanlike manner and one of habitability. The first warranty is said to be only that the house is constructed in a reasonably skillful and workmanlike manner.

The test for breach of that warranty is reasonableness, not perfection; the standard being, ordinarily, the quality of work that would be done by a worker of average skill and intelligence. Citing *Shiffers v. Cunningham Shepherd Builders Co.*, 28 Colo.App. 29, 470 P.2d 593 (1970); *Waggoner v. Midwestern Development, Inc.*, 83 S.D. 57, 154 N.W.2d 803 (1967). As cited by our supreme court in *Richards*, the Illinois Supreme Court in its discussion in *Hubschman* recognized the scope of warranty of habitability as one which requires only that the house must be reasonably suited for its intended use and not simply inhabitable.

■ Our Arizona decisions, *Columbia Western Corp. v. Vela*, *supra*, and *Richards v. Powercraft Homes*, *supra*, do not speak in terms of two warranties. Rather they refer to one implied warranty, that of workmanship *and* habitability. We believe that to be the law in our state, i.e., that there is no distinction except insofar as the extent of the damage arising from latent defects may be greater if the home has actually become unlivable. *See Dillig v. Fisher*, *supra*.

We also believe Arizona does not adhere to the narrow standard proposed by the appellee, that the defect be such that it will not keep out the elements or that it is not a safe place to live. Rather we find the test enunciated in *Hubschman*, that the home must be reasonably suited for its intended use, consistent with the Arizona decisions. As the appellants argue in their reply brief, it would be the height of cynicism to allow a shoddy builder to escape liability because his work was not shoddy enough. In this appeal from a summary judgment, the facts clearly create a question of fact on breach of the implied warranty.

### The Negligence Count

■ We agree with the appellee that the judgment dismissing the negligence count should be affirmed. The damage claimed in this case involves the structure itself. There is no claim for damage to personal

property or personal injury. In *Woodward v. Chirco, supra,* our supreme court held that the purchaser of a home could sue in both contract and tort for injuries sustained due to the builder's failure to construct the house in a workmanlike manner. However, the court explained that the available action in contract was for "defects in the structure itself as such defects render the home less than the purchaser bargained for," whereas the available tort claim was for "damage to personal property or personal injury" caused by the defective construction.

A case directly in point is *Crowder v. Vandendeale,* 564 S.W.2d 879 (Mo.1978). In that opinion the court recognized an implied warranty of habitability in a new home. However, the court concluded that recovery for property damage caused by latent structural defects was not actionable in negligence. The court reasoned:

A duty to use ordinary care and skill is not imposed in the abstract. It results from a conclusion that an interest entitled to protection will be damaged if such care is not exercised. Traditionally, interests which have been deemed entitled to protection in negligence have been related to *safety* or freedom from physical harm. Thus, where personal injury is threatened, a duty in negligence has been readily found. Property interests also have generally been found to merit protection from physical harm. However, where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality.* This standard of quality must be defined by reference to that which the parties have agreed upon. 564 S.W.2d at 882. (emphasis in original).

And in *Redarowicz v. Ohlendorf, supra,* the Illinois Supreme Court held that the subsequent purchaser of a home could not recover for the resulting economic loss in tort, that to recover in negligence there must be a showing of harm beyond disappointed expectations and loss of the benefit of the bargain in the purchase of a new home.

Turning finally to the count sounding in product liability, we agree with the appellee that the dismissal of that count by way of summary judgment should be affirmed despite the intervening decision in *Richards.* A product liability case does not require privity so the trial court's ruling was not based on that reason. Rather the trial court was correct because this is not a product liability case. In *Arrow Leasing Corp. v. Cummins Arizona Diesel, Inc.,* 136 Ariz. 444, 666 P.2d 544 (App. 1983), Division One of the Court of Appeals held that damage to the product itself caused by a defect in that product is not a harm which product liability is designed to redress. We agree. Although product liability can give rise to damages to property, *see Rocky Mountain Fire and Casualty Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 640 P.2d 851 (1982), this does not include the defective product itself. Such a claim is best handled by contract law rather than tort.

There is yet another reason for dismissing the strict liability count. No evidence before the trial court even suggested that the construction defects made the home unreasonably dangerous. *Rocky Mountain Fire Casualty Co., supra; O.S. Stapley Co. v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968); *Vineyard v. Empire Machinery Co.,* 119 Ariz. 502, 581 P.2d 1152 (App. 1978).

We reverse the judgment in favor of the appellee on the implied warranty count. We affirm the judgment on the other counts.

HATHAWAY and HOWARD, JJ., concur.