75 P.3d 1081

William W. **CARSTENS** and Deborah Carstens, husband and wife; Deborado, a Colorado limited liability company, Plaintiffs–Appellants,

v.

**CITY OF PHOENIX**, a municipal corporation; Richard Ryall; Dale Borger; and Jerry Coke, Defendants–Appellees.

No. 1 CA–CV 02–0084.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 9, 2003.

Review Denied Feb. 10, 2004.*

---

*McLane & McLane v. Prudential Ins. Co. of Am.,* 735 F.2d 1194, 1195–96 (9th Cir.1984).

* NOTE: The Honorable ROBERT M. BRUTINEL, Judge *Pro Tempore,* was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to Ariz. Const. art. VI, § 3 and A.R.S. §§ 12–145 through 147.

* Justice Hurwitz voted to grant review.

Meyer Hendricks & Bivens, P.A. By Ed Hendricks, Marc Kalish, Phoenix, for Appellants.

Holm Wright Hyde & Hays, PLC By Brad Holm, Alan K. Hyde, Phoenix, for Appellees.

## OPINION

WEISBERG, Judge.

¶ 1 William and Deborah Carstens and Deborado, LLC, ("the Carstens") sued the City of Phoenix ("City") and three of its building inspectors alleging that the inspectors were grossly negligent because they failed to discover serious construction defects in the house that the Carstens later purchased. The trial court dismissed the tort claims under the economic loss rule because the Carstens had suffered no personal injuries or damage to property other than the alleged construction defects. For the following reasons, we affirm the trial court's judgment.

## BACKGROUND

¶ 2 In July 1996, Corwa, Inc. purchased the house at 56 Biltmore Estates. Later that year, Corwa obtained a construction permit from the City to add 3,150 square feet to the kitchen and second story of the house. The remodeling work was done in 1997. Between January 31 and December 12, 1997, City building inspectors Richard Ryall, Dale Borger, and Jerry Coke inspected the house several times to determine whether, among other things, the footings and structural, electrical, and mechanical aspects of the project complied with the City's uniform building codes. Based upon those inspections, the City approved the work done by Corwa.

¶ 3 In May 1999, the Carstens bought the house from Alvarado, Inc., a successor in interest to Corwa, for $2,000,000. Soon thereafter, the Carstens hired a contractor to do some minor remodeling on the house. Because the contractor discovered a few construction defects and building code violations, the Carstens hired engineers to assess the structural, mechanical, and electrical systems

of the house. The engineers found numerous defects and code violations, including missing fire blocking, deeply-notched floor and ceiling joists, inadequate beam support, inadequate natural gas piping, and improper and hazardous venting and electrical wiring. Major repairs were necessary to make the house safe for occupancy.

¶ 4 In December 1999, the Carstens filed a notice of claim against the City and the three inspectors pursuant to Arizona Revised Statutes ("A.R.S.") section 12–821.01(A) (Supp. 2002). They alleged that the City had breached its duty to conduct a proper inspection of the house in accordance with applicable building codes. Thereafter, in January 2000, the Carstens had the house demolished.

¶ 5 In June 2000, the Carstens sued the City and the three inspectors (collectively the "City defendants").[1] They alleged that the City defendants were grossly negligent in failing to discover numerous violations of the building codes during the inspections performed in connection with the 1997 remodeling project and that their gross negligence created a substantial risk of physical harm to the Carstens.

¶ 6 The City defendants moved for summary judgment. They argued that, because the alleged construction defects had not caused any personal injury or property damage, the economic loss rule barred the Carstens from maintaining a tort claim against them for the amounts necessary to repair or replace the defects.

¶ 7 The trial court granted the motion. It found that the City defendants "did not owe [the Carstens] a duty of care to protect them from the type of harm that they have allegedly suffered in this matter." The court further stated that, although government agencies and employees may be liable for negligent inspection when the negligence causes physical injury and property damage, they could not be liable for the economic losses suffered by homeowners when contractors failed to construct home improvements in compliance with building codes or in a workmanlike manner. The Carstens timely appealed from the judgment.

## STANDARD OF REVIEW

¶ 8 On appeal from summary judgment when the facts are undisputed, we review de novo whether the trial court correctly applied the law and whether the appellee was entitled to judgment as a matter of law. *See Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, 219, ¶ 5, 52 P.3d 786, 788 (App.2002).

## DISCUSSION

¶ 9 The Carstens argue that the trial court erred in concluding that no duty existed due to the nature of the injury suffered. They also maintain that the trial court erred by ruling that their claim against the City was barred by the economic loss rule. Because the City's duty in these circumstances is clear, the only question here is whether the economic loss doctrine precludes tort recovery when the Carstens have alleged no physical injury or property damage resulting from construction defects. *See Daggett v. Maricopa County*, 160 Ariz. 80, 85, 770 P.2d 384, 389 (App.1989) (governmental regulations requiring inspections may create a duty to protect public from physical harm).

¶ 10 The economic loss rule bars a party from recovering economic damages[2] in tort unless accompanied by physical harm, either in the form of personal injury or secondary property damage. Sidney R. Barrett, Jr., *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analy-*

---

1. The Carstens also sued Corwa, Alvarado, and their principal owners, James and Linda Hurst, for negligence, fraud, breach of contract, negligent misrepresentation, breach of the covenant of good faith and fair dealing, unjust enrichment, and breach of the warranty of workmanship and habitability. Additionally, the Carstens sued various subcontractors for negligence and breach of the warranty of workmanship and habitability. Those defendants are not parties in this appeal.

2. "Purely economic loss is generally defined as 'the loss of the benefit of the user's bargain ... including ... pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property.'" *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259, 1263 (2000) (quoting *American Law of Products Liability* § 60:36, at 66 (3d ed.1991)).

**126**

*sis*, 40 S.C. L.Rev. 891, 895–96 (1989). The rule stems from the principle that contract law and tort law each protect distinct interests. Generally, contract law enforces the expectancy interests between contracting parties and provides redress for parties who fail to receive the benefit of their bargain. *Id.* at 894–95, 901–02. Its focus, therefore, is on standards of quality as defined by the parties in their contract. *Id.* at 901. Tort law, in contrast, seeks to protect the public from harm to person or property. *Id.* at 901–02. To this end, it evaluates the objective reasonableness of a person's conduct and compensates victims for their actual harm resulting from that conduct. *Id.* The economic loss rule thus "serves to distinguish between tort, or duty-based recovery, and contract, or promise-based recovery, and clarifies that economic losses cannot be recovered under a tort theory." *Calloway*, 993 P.2d at 1264. In the construction defect setting, "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." *Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1247 (Fla.1993).

¶ 11 In Arizona, it is well-established that a homeowner may not recover in tort against a contractor for economic losses attributable to defective construction when the negligence has not caused personal injury or damage to property other than the defective structure itself. Our supreme court first recognized the applicability of the economic loss rule in construction defect litigation in *Woodward v. Chirco Constr. Co.*, 141 Ariz. 514, 687 P.2d 1269 (1984). In *Woodward*, homeowners sued the builder of their house for both breach of the implied warranty of workmanlike performance and habitability and negligence after large cracks developed in the house walls and foundation, the fireplace separated from the wall, a family room wall shifted forward, the kitchen ceiling began to bow, and the floor warped. *Id.* at 515, 687 P.2d at 1270. The trial court dismissed both claims. On appeal, this court affirmed the dismissal of the negligence claim, but reversed the court's ruling on the implied warranty claim because the six-year statute of limitation on that claim had not expired. *Woodward v. Chirco Constr. Co.*, 141 Ariz. 520, 526, 687 P.2d 1275, 1281 (App.1984).

¶ 12 On review to our supreme court, the builder argued that, because the implied warranty is imposed by law, it did not arise out of contract, and therefore the statute of limitations for tort claims applied. *Woodward*, 141 Ariz. at 515, 687 P.2d at 1270. The supreme court, however, disagreed, holding that a claim based on the implied warranty was contractual in nature and distinct from a tort claim based upon a builder's breach of the common law duty of care. *Id.* at 515–16, 687 P.2d at 1270–71. Thus, the *Woodward* court recognized that an injury resulting from negligent construction may give rise to claims sounding in both contract and tort. Specifically, the court stated that the homeowners could claim damages in contract for defects in the structure that rendered the home less than the purchaser bargained for, and, further, that the homeowners could also sue in tort for injuries sustained due to the contractor's breach of its duty of care. *Id.* at 516, 687 P.2d at 1271. To illustrate the distinction between these claims, the court explained that "if a fireplace collapses, the purchaser can sue in contract for the cost of remedying the structural defects and sue in tort for damage to personal property or personal injury caused by the collapse." *Id.* The supreme court thereby established the applicability of the economic loss rule to construction defect claims.

¶ 13 Applying *Woodward*'s reasoning, this court, in *Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 444–45, 690 P.2d 158, 163–64 (App.1984), held that, absent property damage or personal injury, plaintiffs could not maintain a negligence claim against a homebuilder. In *Nastri*, the subsequent purchasers of a house sued the builder for latent construction defects that caused severe damage to the house, including cracks in the cement pad, walls, ceilings, a joist, and bricks in a front archway. *Id.* at 440–41, 690 P.2d at 159–60. The trial court dismissed the action, and on appeal, this court noted that the plaintiffs' damage claim involved only the structure itself, without additional claims for damages to property or person. *Id.* at 444–

45, 690 P.2d at 163–64. We therefore held that the trial court had properly dismissed the negligence count because a tort claim was available only for damage to personal property or for personal injury caused by defective construction. *Id.*

¶ 14 Four years later, in *Colberg v. Rellinger,* 160 Ariz. 42, 44, 770 P.2d 346, 348 (App.1988), this court relied on the reasoning in *Woodward* and *Nastri* to hold that the plaintiffs could not recover in negligence against a construction supervisor. The plaintiffs brought a breach of contract claim against the construction company and a claim alleging negligence and breach of implied warranty against the construction supervisor, who was both the president of the construction company and the qualifying party for the company's contractor's license. The trial court awarded the plaintiffs damages against the construction company on the contract claim but denied recovery against the supervisor. *Id.* On appeal, the plaintiffs argued that the supervisor could be liable in negligence for breaching his duty of care under the contractor licensing statutes. *Id.* This court concluded, however, that because the plaintiffs had not alleged any damage to other property or any personal injuries, they could not recover in tort for the supervisor's negligence. *Id.* at 47, 770 P.2d at 351.

¶ 15 Despite *Woodward, Nastri,* and *Colberg,* the Carstens assert the following arguments: (1) whether the economic loss rule applies in cases in which the plaintiff does not have a contract claim against a specific defendant; (2) whether the economic loss rule applies in cases in which construction defects render a house unsafe to its inhabitants; and (3) whether application of the economic loss rule in this case is inconsistent with Arizona law authorizing tort claims against governmental entities for breach of duty. We address each of these arguments in turn.

■ ¶ 16 First, the Carstens argue that the economic loss rule should only apply in cases in which a plaintiff also has contractual remedies available against that same tortfeasor. Here, the Carstens argue that, unlike the plaintiffs in *Woodward, Nastri,* and *Colberg,* they have only tort-based claims avail-

able against the City defendants. Thus, the Carstens reason that they should be permitted to pursue their claim against the City defendants. We, however, disagree.

■ ¶ 17 Contrary to the Carstens' characterization, Arizona courts have never held that the application of the economic loss rule depends upon the plaintiff also having a viable contract claim against the defendant. Instead, irrespective of a plaintiff's contractual claims against a defendant, the rule bars recovery of economic damages in tort because such damages are not cognizable in tort absent actual injury. In this case, because the Carstens allege purely economic losses, their damages sound in contract, and, presumably, may be asserted against those defendants with whom the Carstens are in privity. Thus, the rule does not prevent the Carstens from recovering their economic losses, but merely restricts them to suits against those defendants actually liable in contract.

¶ 18 This limitation, we note, is consistent with the result in *Colberg,* where the court affirmed the dismissal of the plaintiffs' negligence claim against the supervisor because of the economic loss rule even though the plaintiffs had no other cause of action against him. 160 Ariz. at 45–47, 770 P.2d at 349–51. The plaintiffs, thereby, were forced to pursue their contract-based remedies against only the construction company with whom they were in privity. *Id.; see also Anderson Elec., Inc. v. Ledbetter Erection Corp.,* 133 Ill.App.3d 844, 88 Ill.Dec. 863, 479 N.E.2d 476, 479 (1985) (holding that economic loss rule applies even when the plaintiff has no contract claim against the specific defendant and application of the rule would therefore leave the plaintiff without a remedy), *aff'd,* 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (1986). That same situation exists here.

¶ 19 Second, without citing supporting Arizona authority, the Carstens argue that the economic loss rule should be limited to cases in which homeowners are faced with only non-dangerous defects. Again, we disagree.

■ ¶ 20 The application of the economic loss rule in a construction defect case has never been based upon the inherent danger-

ousness of the defect. In fact, in *Woodward, Nastri,* and *Colberg,* the homeowner-plaintiffs alleged structural defects similar in nature to those alleged here. However, those courts did not suggest any exception to the economic loss rule based on the potential safety hazard posed by the defects. Particularly, we reject the Carstens' interpretation of *Nastri* as allowing a tort action for economic loss when structural defects expose the inhabitants to the threat of personal injury. The *Nastri* court considered only whether there had been damage to other personal property or to a person. After concluding that the damages claimed were merely to the structure itself, the court applied the economic loss rule and affirmed the dismissal of the plaintiffs' negligence claim against the builder.[3]

¶ 21 This conclusion is also consistent with our supreme court's analysis of the economic loss rule in a products liability context. *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.,* 143 Ariz. 368, 378, 694 P.2d 198 (1984). There, the court proposed five hypothetical equipment failures and resulting damages. *Id.* at 378, 694 P.2d at 208. In two of the hypotheticals, the defect was discovered or caused a malfunction but did not injure anyone or cause damage to any other equipment, although losses for shutdown, start-up, testing costs, and/or loss of profits were incurred. *Id.* The court stated that in such instances the economic losses were not recoverable in tort because "[t]here was no accident; the danger remained latent, even though the loss is attributable to a defect that could have become unreasonably dangerous. The loss is only economic in nature." *Id.* at 379, 694 P.2d at 209.

■ ¶ 22 Further, contrary to the Carstens' reasoning, limiting the economic loss rule to cases in which the homeowners have alleged only non-dangerous defects does not force such homeowners to wait until they sustain injury to their person or property before they can recover. Instead, applying the economic loss rule merely limits homeowners to contract-based remedies when

seeking damages; they are free to initiate a suit for the cost to repair or replace the defective conditions immediately upon discovering such defects. We therefore reject the Carstens' argument.

¶ 23 Third, the Carstens argue that applying the economic loss rule ignores Arizona law that provides for such tort actions against governmental entities and employees who have a duty to make competent inspections. In support, they cite *Bill Moore Motor Homes, Inc. v. State,* 129 Ariz. 189, 629 P.2d 1025 (App.1981); *Brown v. Syson,* 135 Ariz. 567, 663 P.2d 251 (App.1983); *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984); and A.R.S. § 12–820.02(A)(6) (Supp.2002).

¶ 24 In *Moore,* a motor home dealer sued the State, alleging that it negligently failed to detect stolen vehicles during an inspection prior to issuing certificates of title for the vehicles. 129 Ariz. at 191, 629 P.2d at 1027. The court held that, because the state motor vehicle inspector had inspected vehicles for the dealer on numerous occasions, a relationship was established under which the public duty owed by the state inspector was narrowed to a duty to the dealer that formed the basis for a private cause of action. *Id.* at 195, 629 P.2d at 1031. Thus, the court focused on the particularized relationship between the inspector and the dealer as the source of the duty; while here there is not even an allegation of such a special relationship.

¶ 25 In *Brown,* the court was concerned with the immunity of a city building inspector who allegedly was negligent in inspecting the construction of a residence. 135 Ariz. at 568, 663 P.2d at 252. The court held that the inspector was not immune from suit, and it remanded the case for further proceedings because material facts regarding the alleged construction defects were in dispute. *Id.* However, the *Brown* opinion does not disclose the nature of the damages suffered by the homeowners, making it impossible to know whether the economic loss rule arguably applied. In any event, the rule was not discussed.

---

**3.** Moreover, because any construction defect can arguably be said to present a safety hazard, recognizing such an exception would undermine

the bright-line test of actual injury set out by the economic loss rule.

¶ 26 Nor does *Donnelly* help the Carstens. There, our supreme court held that a contractor who suffered financial loss, allegedly due to faulty plans prepared by the defendant architects, could maintain a negligence cause of action against the architects. 139 Ariz. at 188, 677 P.2d at 1296. The court reasoned that, given the duty of design professionals "to use ordinary skill, care, and diligence in rendering their professional services," *id.* at 187, 677 P.2d at 1295, the architects were "liable for foreseeable injuries to foreseeable victims" of their negligent professional services. *Id.* at 188, 677 P.2d at 1296.

¶ 27 The *Colberg* court, however, distinguished *Donnelly* from *Colberg*'s application of the economic loss rule by noting that *Donnelly* "did not involve a claim of negligent construction nor a claim of implied warranty of workmanlike performance and habitability ... [because] there were no structural defects to remedy." 160 Ariz. at 47, 770 P.2d at 351. In addition, the *Donnelly* court's allowance of the negligence claim against the architects hinged on the special situation in which the contractor, although not in privity of contract with the architects, had to rely directly upon their work.[4] As the Arizona Supreme Court noted in *Napier v. Bertram*, 191 Ariz. 238, 242, ¶ 16, 954 P.2d 1389, 1393 (1998), *Donnelly* recognized a professional's duties to a non-client where "there was a foreseeable risk of harm to a foreseeable non-client whose protection depended on the actor's conduct" such that "the contractor was in the care of the architect." Here, the Carstens alleged that James Hurst, rather than the City defendants, represented to them that there were no structural, mechanical, or electrical problems with the house; that there were no violations of city, building, zoning, or health laws, codes, statutes, ordi-

nances, or regulations regarding the house; and that all latent, material defects had been disclosed. Given these allegations, the Carstens could not be considered to have been in the "care" of the City inspectors in the same way that the *Donnelly* contractor was in the care of the architects.[5] Therefore, *Donnelly* does not control here.

¶ 28 Finally, the Carstens point out that, under the provisions of the applicable immunity statute, A.R.S. § 12-820.02(A)(6), City inspectors are liable for gross negligence for "[t]he failure to discover violations of any provision of law when inspections are done of property other than property owned by the public entity in question." While this, of course, is a correct statement of law, the fact that the City inspectors may be liable for gross negligence does not mean that the economic loss rule does not limit recovery when no personal injury or damage to other property has resulted. Rather, the statute merely establishes the standard of liability. Thus, in a case where an inspector's gross negligence leads to personal injury or property damage, the inspector would be liable in tort and those tort-based damages would be recoverable. However, when tort-based damages are not present, the economic loss rule controls.

## CONCLUSION

¶ 29 For the foregoing reasons, we hold that the economic loss rule precludes the negligence claims against the City defendants. Accordingly, we affirm the judgment.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and PATRICK IRVINE, Judge.

4.  Of course, the property owner in *Donnelly* had entered into contract with both the contractor and the architects, which contemplated that the contractor would rely upon the architects' services. 139 Ariz. at 185, 677 P.2d at 1293.

5.  Moreover, we note that the *Donnelly* holding applied to "professionals" whose work product necessarily formed the basis for the work of the contractor. In that context, although not necessary to this decision, we question whether the

City building inspectors can be considered "professionals" in the sense that architects are professionals. *See Calloway*, 993 P.2d at 1270 (holding that economic loss rule applied to shield city defendant from plaintiff-homeowners' claim alleging negligent inspection); *see also Moransais v. Heathman*, 744 So.2d 973, 976 (Fla.1999) (for purposes of the statute of limitations, a profession is a vocation requiring at least a four-year college degree and state licensing).