FILED BY CLERK

MAR 19 2009

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| VALLEY FORGE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff/Appellant, | ) ) | 2 CA-CV 2008-0095 DEPARTMENT B |
| v. | ) ) | O P I N I O N |
| SAM'S PLUMBING, LLC, an Arizona Limited Liability Company; and SAMUEL N. THOMAS and LOIS THOMAS, husband and wife, | ) ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CV-200600364

Honorable Robert Carter Olson, Judge

REVERSED AND REMANDED

---

Shughart Thomson & Kilroy, P.C.
  By Robert O. Dyer and Andrew S. Jacob                                                   Phoenix
                                                       Attorneys for Plaintiff/Appellant


Rai & Barone, P.C.
  By Rina Rai and Brian J. Schmidt                                                        Phoenix
                                                      Attorneys for Defendants/Appellees

---

E C K E R S T R O M, Presiding Judge.

¶1 The plaintiff, Valley Forge Insurance Company, appeals from the trial court's entry of summary judgment in favor of defendants Sam's Plumbing, LLC, and Samuel and Lois Thomas (collectively, "Sam's Plumbing"). Valley Forge argues the trial court erred in finding its subrogated negligence claim barred by the economic loss rule. We agree and reverse and remand for the reasons set forth below.

**Factual and Procedural Background**

¶2 This case arose from a gas explosion in a shopping center building in Pinal County owned by Gustav Kuhn and insured by Valley Forge.[1] Viewing the facts in the light most favorable to Valley Forge, the party opposing summary judgment, *see Grand v. Nacchio*, 214 Ariz. 9, ¶ 3, 147 P.3d 763, 767 (App. 2006), we accept for purposes of this appeal that the explosion was caused by negligent gas line work performed by Sam's Plumbing pursuant to its contract with a tenant leasing a space in the shopping center. The explosion "severely damaged" Kuhn's shopping center, but it neither caused him bodily injury nor damaged any of his personal property. Valley Forge paid more than $1.1 million to Kuhn "for property and business-interruption damages" caused by the explosion, which fully compensated Kuhn for the incident.[2] Valley Forge then asserted a subrogated

---

[1]Valley Forge's complaint was originally filed in Maricopa County. When venue changed to Pinal County, the cause number CV-200701551 was assigned. This cause of action was later consolidated, along with several others, into CV-200600364. *See* Ariz. R. Civ. P. 42(a).

[2]Although Valley Forge asserted in its opening brief that it paid Kuhn "more than $1.4 million for physical property damages and lost rents," it failed to support this claim with citations to the record. In any event, the precise amount of damages the explosion caused is a factual issue irrelevant to our disposition of this appeal.

negligence claim against Sam's Plumbing seeking to recover Kuhn's damages resulting from the explosion.

¶3        Sam's Plumbing filed a motion for summary judgment and argued the "economic loss rule" barred Valley Forge's claim and therefore any claim against it sounded in the law of contract rather than the law of tort. The trial court, relying on *Carstens v. City of Phoenix*, 206 Ariz. 123, 75 P.3d 1081 (App. 2003), and *Hayden Business Center Condominiums Ass'n v. Pegasus Development Corp.*, 209 Ariz. 511, 105 P.3d 157 (App. 2005), *disapproved of in part by Lofts at Fillmore Condominium Ass'n v. Reliance Commercial Construction, Inc.*, 218 Ariz. 574, 190 P.3d 733 (2008), applied the "Economic Loss Doctrine" to the case and found the damage to the building itself was not "qualifying property damage for the purpose of bringing a negligence claim." The court thus concluded Valley Forge's negligence claim was barred as a matter of law and granted summary judgment in favor of Sam's Plumbing. Following the entry of a final judgment pursuant to Rule 54(b), Ariz. R. Civ. P., Valley Forge filed this timely appeal.

**Discussion**

¶4        Valley Forge argues the "economic loss rule" does not apply to this case because Sam's Plumbing's negligence did not simply cause physical harm to the piping system—the "subject of th[e] bargain" with the tenant—but instead caused extensive damage to the shopping center building owned by Kuhn. On appeal from summary judgment, we determine de novo whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters &*

3

*Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, ¶¶ 13-14, 38 P.3d 12, 20 (2002). We conclude the trial court erred in finding Valley Forge's negligence claim barred as a matter of law.

¶5        Generally, one may recover in tort for negligently caused property damage. *See* Restatement (Second) of Torts § 281 (1965) (invasion of protected interest of another element of negligence action); *see also Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 445, 690 P.2d 158, 164 (App. 1984) ("'Property interests . . . have generally been found to merit protection from physical harm.'"), *quoting Crowder v. Vandendeale*, 564 S.W.2d 879, 882 (Mo. 1978). However, when the property damaged is the subject of a contract or warranty, a typical feature of product liability and defective construction cases, the question arises whether the plaintiff's claims, if any, should sound in contract or tort. *E.g., Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 375, 694 P.2d 198, 205 (1984), *abrogated on other grounds by Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 111 P.3d 1003 (2005); *Woodward v. Chirco Constr. Co.*, 141 Ariz. 514, 515, 687 P.2d 1269, 1270 (1984). This issue is resolved on a case-by-case basis with the court analyzing the purposes of the respective bodies of law and applying whichever law is most appropriate. *Salt River*, 143 Ariz. at 375-76, 694 P.2d at 205-06.

¶6        Contract law protects the expectation that the parties will receive the benefits of their bargain and encourages the efficient private ordering of liabilities by allowing parties to negotiate and distribute their respective responsibilities, while tort law promotes safety and protects personal and property rights by imposing a baseline duty of care. *See id*.; *Carstens*,

4

206 Ariz. 123, ¶ 10, 75 P.3d at 1084. Accordingly, in the context of property damage, contract law focuses on standards of quality as defined by the contracting parties; tort law on the objective reasonableness of certain conduct and the actual harm it causes. *Carstens*, 206 Ariz. 123, ¶ 10, 75 P.3d at 1084.

¶7 With these principles in mind, our supreme court has directed Arizona courts to consider three non-dispositive factors to determine whether tort or contract law should apply to a particular claim: (1) the nature of the defect causing loss, (2) how the loss occurred, and (3) "the type of loss for which the plaintiff seeks redress." *Salt River*, 143 Ariz. at 376, 694 P.2d at 206. The first factor turns on whether quality or safety concerns are primarily implicated. *See id.* at 376-77, 694 P.2d at 206-07. The second factor looks to whether the loss results from a slow deterioration or a sudden accident or calamity. *See id.* at 377-78, 694 P.2d at 207-08. The third factor examines the nature of the loss claimed as well as any other contemporaneous losses. *See id.* at 379, 694 P.2d at 209. If damage occurs suddenly and accidentally and the defect poses an unreasonable risk of danger to people or other property, the claim will sound in tort, even if, as in *Salt River*, the only property damaged is the defective product itself. *See id.*

¶8 Applying those principles here, we find no reason to bar Valley Forge's tort action. Sam's Plumbing contracted with the tenant to do limited work to the tenant's units, and the resulting explosion severely damaged not only those units, but other parts of the shopping center as well. The deficient work on the gas pipes did not simply fall below the quality standards specified in the tenant's contract, thereby disappointing the tenant's

commercial expectations. Rather, that work presented an extreme risk of danger to everyone and everything around the piping. And, the explosion was the very type of "sudden calamity or . . . extraordinary event" that is the hallmark of tort liability. *Id.* at 378, 694 P.2d at 208. Finally, the record suggests the losses suffered went far beyond damage to the gas lines themselves and caused extensive damage to the shopping center. Thus, analysis of each of the criteria our supreme court established for determining whether a claim should sound in tort or contract clearly shows that the claim we consider here sounds in tort.

¶9        Although *Salt River* specifically addressed the application of tort and contract law in the products liability context, the economic loss rule contemplated in *Salt River* involves the same policy concerns as those present in defective construction cases. *See* Sidney R. Barrett, Jr., *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis*, 40 S.C. L. Rev. 891, 897 (1989) (noting rationales for limiting tort claims and observing "[t]he economic loss doctrine often is described as a creature of product defect litigation"). And, we can find no basis for distinguishing *Salt River* from *Woodward*, a defective construction case decided by the supreme court approximately three months earlier. *See Woodward*, 141 Ariz. at 515-16, 687 P.2d at 1270-71 (recognizing both contract and tort claims may be available in construction defect cases). *Woodward* only briefly suggested what types of damages would be presumptively actionable under contract and tort law respectively and did so only in dicta. *See id.* at 516, 687 P.2d at 1271 ("For example, if a fireplace collapses, the purchaser can sue in contract for the cost of remedying the structural defects and sue in tort for damage to personal property or personal injury caused by the

6

collapse."). That reasoning fell far short of concluding tort claims are categorically precluded when a claimant has exclusively suffered damage to property subject to warranty or contract. Indeed, in its far more comprehensive treatment of the topic in *Salt River*, the supreme court characterized the type of loss suffered as merely one of several factors to be considered when determining whether property damage is actionable in tort. 143 Ariz. at 376, 694 P.2d at 206. We therefore do not read *Woodward*, a construction defect case, as setting forth a different rule for resolving application-of-law questions than *Salt River*, a products liability case.

¶10         Nevertheless, Sam's Plumbing contends, and the trial court found, that controlling Arizona jurisprudence in the defective construction context has expressly barred recovery for property damages in tort when the plaintiff has suffered neither personal injury nor damage to personal property. Indeed, several court of appeals cases have applied a *per se* rule, barring negligence claims when damage involves only the structure itself. In *Nastri*, a case decided before *Salt River*, this court held that, in an action between a homeowner and a builder, only bodily injury or damage to personal property was actionable in tort, not damage solely to the structure. *Nastri*, 142 Ariz. at 444-45, 690 P.2d at 163-64. Citing *Nastri*, Division One reiterated that holding in *Carstens*, a case decided after *Salt River*. *Carstens*, 206 Ariz. 123, ¶¶ 2, 11, 13, 75 P.3d at 1082, 1084-85.[3] There, the court

---

[3]*Carstens*, like *Nastri*, interpreted *Woodward v. Chirco Construction Co.*, 141 Ariz. 514, 687 P.2d 1269 (1984), to require that holding. *See Carstens*, 206 Ariz. 123, ¶ 13, 75 P.3d at 1084-85; *Nastri*, 142 Ariz. at 445, 690 P.2d at 164. However, as discussed, *supra*, ¶ 9, that interpretation of *Woodward* cannot be harmonized with the reasoning of *Salt River*.

specifically rejected any consideration of the dangerousness of a building defect in determining whether an action could sound in tort, reasoning that to do so would "undermine the bright-line test of actual injury set out by the economic loss rule." *Id.* ¶¶ 20-21 & n.3, 75 P.3d at 1085-86 & n.3; *see also Hayden Bus. Ctr. Condos. Ass'n*, 209 Ariz. 511, ¶¶ 26-27, 105 P.2d at 162 (holding condominium association could bring tort action only for personal injury or damage to personal property), *disapproved of in part by Lofts at Fillmore Condo. Ass'n*.

¶11        As our discussion of *Salt River* makes clear, however, our supreme court provided a list of factors, not a bright-line test, for determining whether to apply tort or contract law to a given situation when property has been damaged. 143 Ariz. at 376, 379-80, 694 P.2d at 206, 209-10 ("Each case must be examined to determine whether the facts preponderate in favor of the application of tort law or commercial law exclusively or a combination of the two."). And *Carstens* overlooks that one of the factors articulated by the court as relevant to a determination of whether a property damage claim sounds in tort is the dangerousness of the defect. *Salt River*, 143 Ariz. at 376, 694 P.2d at 206. Furthermore, *Salt River* teaches, in direct contradiction to the *per se* rule advocated by Sam's Plumbing, and adopted in *Carstens*, that a claimant may recover in tort when only the defective property is damaged. *Id*. at 378-79, 694 P.2d at 208-09.[4]

---

[4]Although we acknowledge that *Salt River* does not address the topic, we also question *Carstens*'s conclusion that the availability of contractual remedies to the claimant is irrelevant in assessing the availability of tort remedies in the defective construction context. *See Carstens*, 206 Ariz. 123, ¶ 17, 75 P.3d at 1085 ("[I]rrespective of a plaintiff's contractual claims against a defendant, the [economic loss] rule bars recovery of economic

¶12　　　　Notably, the United States Supreme Court has adopted the *per se* rule for determining whether a claim sounds in tort or contract in federal maritime cases. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870-71 (1986). And the authorities cited by *Carstens* explaining such a rule in construction defect cases each referred to the Court's reasoning in *Delaval*. *See Calloway v. City of Reno*, 993 P.2d 1259, 1263-64 (Nev. 2000), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31 (Nev. 2004); Barrett, *supra*, at 915-17. *Delaval*, in turn, adopted the *per se* rule based on the reasoning and holding of *Seely v. White Motor Co.*, 403 P.2d 145, 151 (Cal. 1965). *See Delaval*, 476 U.S. at 871. Our supreme court, however, expressly rejected *Seely*'s approach in *Salt River*. 143 Ariz. at 379, 694 P.2d at 209. Thus, *Carstens* not only set forth an economic loss rule at odds with the analysis required by our supreme court in *Salt River*, but it anchored its reasoning in a stream of legal authority expressly rejected in *Salt River*.[5]

¶13　　　　We are not at liberty to disregard the clear holdings of our supreme court even when, as here, those holdings have been overlooked by subsequent case law from our intermediate appellate courts. *See State v. Bejarano*, ___ Ariz. ___, ¶ 6, 200 P.3d 1015, 1017 (App. 2008). We conclude, therefore, that the trial court erred when it dismissed Valley

---

damages in tort because such damages are not cognizable in tort absent actual injury."). *But see Woodward*, 141 Ariz. at 516, 687 P.2d at 1271 (suggesting contract remedies most appropriate in home construction context when "defects render the home less than the purchaser bargained for"); Dan B. Dobbs, *An Introduction to Non-Statutory Economic Loss Claims*, 48 Ariz. L. Rev. 713, 726 (2006) (cautioning "the contractual economic loss rule should not bar tort relief to strangers whose rights against the defendant do not arise out of a consensual arrangement that is expected to limit tort rights").

　　　[5]The trial court also relied erroneously on *Delaval.*

9

Forge's tort claims in reliance on those appellate cases and did so on the exclusive grounds that Valley Forge's subrogee had suffered no personal injury or personal property loss arising from the alleged defective workmanship on the gas line.

¶14 We acknowledge the public policy goals of the economic loss rule, which the trial court identified in its scholarly order: to assure that contract law does not "drown in a sea of tort" and to encourage parties to efficiently negotiate the distribution of potential liabilities arising from their contractual relationships. *Delaval*, 476 U.S. at 866. But, as our supreme court's extensive discussion of the problem in the context of products liability aptly demonstrates, the law of tort also pursues important societal goals. *Salt River*, 143 Ariz. at 376-78, 694 P.2d at 206-08 (emphasizing role of tort law in protecting public and "preventing accidents by deterring the distribution of unsafe products"). For that reason, Sam's Plumbing had a general duty under tort law, separate from any contractually assumed obligation, to exercise reasonable care in any work undertaken. This duty included the specific duty to take precautions to avoid dangerous gas explosions. Insofar as Sam's Plumbing breached that duty—a factual question that remains to be determined—it is liable for the actual damages it caused. *See U.S. Fid. & Guar. Co. v. Davis*, 3 Ariz. App. 259, 263, 413 P.2d 590, 594 (1966) (actual damages those "'in satisfaction of, or in recompense for, loss or injury sustained; such compensation or damages for an injury as follow from the nature and character of the act, and will put the injured party in the position in which he was before he was injured'"), *quoting* 25 C.J.S. *Damages* § 2 (1966); *see also Strawberry Water Co. v. Paulsen*, 535 Ariz. Adv. Rep. 25, ¶ 42 (Ct. App. Jul. 29, 2008) ("[L]ost profits may

10

be considered as *part* of actual damages but are not the sole measure of actual damages.") (citations omitted).

**¶15**      The trial court's judgment dismissing Valley Forge's subrogated negligence claim is reversed and the case remanded for further proceedings.


_____

PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____

J. WILLIAM BRAMMER, JR., Judge


_____

GARYE L. VÁSQUEZ, Judge