**Henry J. WOJTUNIK, Plaintiff,**

v.

**Joseph P. KEALY, et al., Defendants.**

**No. CV–03–2161–PHX–PGR.**

United States District Court,
D. Arizona.

Sept. 26, 2005.

---

Steven A. Schwartz, Chimicles & Tikellis LLP, Haverford, PA, for Plaintiff.

Gary R. Battistoni, Lawrence J. Fox, Drinker Biddle & Reath, R. Nicholas Gim-bel, Mccarter & English LLP, Philadelphia, PA, Richard Glenn Himelrick, Tiffany & Bosco PA, Gary L. Birnbaum, Kelly William Lewis, Mariscal Weeks McIntyre & Friedlander PA, Robert D. Mitchell, Mitchell Law Offices PC, Peter D. Baird, Brian J. Pollock, Lewis & Roca LLP, Phoenix, AZ, Jon A. Titus, Wendy Evelyn Giberti, Titus Brueckner & Berry PC, Scottsdale, AZ, for Defendants.

## OPINION AND ORDER

ROSENBLATT, District Judge.

Pending before the Court are Defendants C. James Jensen's and John P. Morbeck's Motion to Dismiss Counts I, III, and V of the Amended Complaint (doc. # 68), the Motion to Dismiss Amended Complaint on Behalf of Defendants Richard J. Seminoff and John P. Stephens (doc. # 69), Defendant John F. Kealy's Motion to Dismiss Plaintiffs' [sic] Amended Complaint (doc. # 71), the Motion to Dismiss by Defendants Joseph P. Kealy and Terry W. Beiriger (doc. # 74), and Defendant Anthony T. Baumann's Separate Motion to Dismiss (doc. # 75). Having considered the parties' memoranda in light of the allegations of the Amended Complaint, which the Court has accepted as true and has construed in the light most favorable to the plaintiff, the Court finds that the plaintiff must file a second amended complaint that complies with the pleading requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA). In light of this ruling, and as a matter of judicial economy, the Court will grant all of the motions to dismiss and will dismiss the Amended Complaint in its entirety notwithstanding that the Court believes that the Amended Complaint in fact states federal and Arizona securities fraud claims to some extent against at least defendant Joseph Kealy.[1]

1. Although defendant Jerry Kleven has not moved do dismiss the Amended Complaint, the Court's conclusions herein regarding the

*Background*

This securities fraud action, originally filed in the Eastern District of Pennsylvania and transferred to the District of Arizona pursuant to 28 U.S.C. § 1404(a), arises from the plaintiff's sale of his closely-held corporation, Anacom Systems Corp., to International FiberCom, Inc. (IFC). The sale was executed on February 9, 2001, after eight months of negotiations, by means of a merger through which the plaintiff exchanged his Anacom stock for IFC stock purportedly worth $8 million; the plaintiff received the IFC stock in three installments, the last being made in August 2001. The plaintiff alleges that the IFC stock he received in payment for his company was artificially inflated in value at the time of the merger and in fact was worthless as IFC, although having issued a steady stream of glowing earning reports on which the plaintiff relied, filed for bankruptcy in February 2002, a year after the merger, and is now defunct. The gist of the amended complaint is that the nine individual defendants, who were officers and/or inside or outside directors of IFC at the time of the merger, committed securities fraud during the negotiations by artificially inflating the value of IFC's stock through accounting fraud, and by making false and misleading statements to the plaintiff personally and through IFC's financial statements and reports filed with the SEC.

The Amended Complaint divides the defendants into three groups: (1) Inside Director Defendants (Joseph Kealy, John Kealy[2], and Jerry Kleven); (2) Outside Director Defendants (Richard Seminoff, John Stephens, C. James Jensen, and John Morbeck); and (3) Officer Defendants (Terry Beiriger and Anthony Baumann). It contains eight counts: (1) Count—Violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5 against the Director Defendants and Beiriger; (2) Count II—Violation of Section 20(a) of the Exchange Act against the Insider Director Defendants and the Officer Defendants; (3) Count III—Violation of ARS § 44–1991 against all defendants; (4) Count IV—Violation of ARS § 44–1999 against the Inside Director Defendants and the Officer Defendants; (5) Count V—Aiding and Abetting Securities Fraud Pursuant to the Common Law of Arizona against the Outside Director Defendants; (6) Count VI—Common Law Fraud against Joseph Kealy; (7) Count VII—Negligent Misrepresentation against Joseph Kealy; and (8) Count VIII—Civil Conspiracy against the Inside Director Defendants and the Officer Defendants.[3]

sufficiency of the Amended Complaint also applies to him where applicable.

2. John Kealy argues, and the Court concurs, that he was an outside director, not an inside director, during the time period relevant to the Amended Complaint. Although Kealy was IFC's executive vice-president and secretary until 1995, the Amended Complaint only alleges that he was a member of IFC's board of directors during the relevant time period, serving on the board's compensation committee. *See Haltman v. Aura Systems, Inc.,* 844 F.Supp. 544, 548 n. 7 (C.D.Cal.1993) ("An outside director is one who is not a full-time employee of the company.") The plaintiff apparently concedes that John Kealy cannot be held liable as an inside director because he makes no effort in his response to argue otherwise. For purposes of this order, the Court treats John Kealy as being an outside director.

3. The Amended Complaint refers to four exhibits being attached to it: Exhibit A being the Declaration of Bradley G. Thomas; Exhibit B being the Declaration of Ronald Hinkle; Exhibit C being the Agreement and Plan of Merger; and Exhibit D being three Contract for Services. For a reason unknown to the Court, none of these four exhibits are attached to the Amended Complaint (doc. # 66) in the Court's record. The Court has nevertheless considered the exhibits as being part of the amended complaint for purposes of its resolution of the motions to dismiss

*Count I*

Count I of the Amended Complaint alleges that all of the named defendants, with the exception of Baumann, engaged in fraudulent and deceptive conduct in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5.[4]

A. Elements

 Section 10(b) provides that it is unlawful to use or employ "any manipulative or deceptive device or contrivance" in contravention of SEC rules in connection with the purchase or sale of any registered security. Rule 10b–5 provides that it is unlawful to (a) employ "any device, scheme, or artifice to defraud", (b) "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading", and (c) "engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." The elements for both a § 10(b) and a Rule 10b–5 claim are (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) which proximately caused the plaintiff's injury. *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002); *accord, In re Daou Systems, Inc. Securities Litigation*, 411 F.3d 1006, 1014 (9th Cir.2005).

B. Pleading Requirements

 In order for claims brought pursuant to § 10(b) and Rule 10b–5 to survive a motion to dismiss, the claims, first, must meet the particularity requirements of Fed.R.Civ.P. 9(b), which requires the plaintiff to set forth not only the neutral facts identifying the transactions underlying the claim, *e.g.*, the time, place, and content of the alleged misrepresentation, but also an explanation as to why the statement or omission complained of was false or misleading. *In re GlenFed, Inc, Securities Litigation.* 42 F.3d 1541 1547–48 (9th Cir.1994) (en banc).

Secondly, a § 10(b)/Rule 10b–5 claim must meet the exacting pleading standards of the PSLRA. *Id* The Ninth Circuit recognizes that the PSLRA "requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail" and that the PSLRA standard "is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003). The Ninth Circuit also recognizes, however, that there is no bright line rule as to how much detail is enough detail, *id.*, and that the bar of the PSLRA should not be raised any higher that is required under its mandates so as not to foreclose the litigation of legitimate securities fraud actions. *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 946 (9th Cir.), *cert. denied,* 540

---

because the exhibits are found elsewhere in the record, having been attached to the plaintiff's proposed amended complaint filed as an exhibit to his Motion for Leave to File Amended Complaint (doc. # 58), and because no defendant has objected to their consideration.

4. Count III of the Amended Complaint alleges that all of the defendants violated A.R.S. § 44–1991, the Arizona securities fraud coun-

terpart to § 10(b). Given that a § 44–1991 claim is subject to the same strict pleading requirements as a § 10(b) claim. *see* A.R.S. § 44–2082, the parties agree, and the Court concurs, that the Court's resolution of Count I governs the resolution of Count III. For that reason, Court will not separately discuss Count III and the Court's comments regarding Count I are to be construed as applying equally to Count III.

U.S. 966, 124 S.Ct. 433, 157 L.Ed.2d 311 (2003).

Under the PSLRA, when a plaintiff alleges that a defendant "made an untrue statement of a material fact" or "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading", the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." 15 U.S.C. § 78u–4(b)(1).

■ In addition to requiring that material misstatements and omissions be pleaded with particularity, the PSLRA requires that the complaint, "with respect to each act or omission" alleged to violate the statute, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind". § 78u–4(b)(2). As interpreted by the Ninth Circuit, this scienter requirement means that the complaint "must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct," *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 974 (9th Cir.1999). This standard requires the pleading of facts that show more than simple recklessness or a motive and opportunity to commit fraud; it requires the pleading of facts that come closer to demonstrating intent. *Id.* at 974.

■ The Ninth Circuit recognizes that its scienter test is "more stringent" than that of the other circuits. *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d at 931 n. 8. In determining whether this standard has been met, the Court must examine not only whether each allegation is supported "by particularized facts and corroborating details", but also "whether the total of the plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that the defendants acted with deliberate or conscious recklessness." *Id.* at 938. In determining whether the complaint has shown a strong inference of scienter, the Court must consider all inferences reasonably drawn from the allegations, including inferences unfavorable to the plaintiff. *Id.*

■ If a plaintiff fails to plead the alleged misleading statements and omissions or the defendant's scienter with the required particularity, the complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir.2001); § 78u–4(b)(3)(A).

### C. Sufficiency of Allegations re False Statements and Omissions

As an initial general comment, the Court notes that the manner in which the Amended Complaint is organized and drafted makes it difficult to understand precisely which individual statements set forth therein are being alleged to be fraudulent or deceptive. Although the plaintiff contends in his response that he has sufficiently set forth the alleged misleading omissions and misrepresentations in the Amended Complaint in that paragraphs 37–38, 43, 50–62, and 63(e)–64 identify the specific misleading statements, numerous of the cited paragraphs refer to multiple statements without specification as to whether every statement therein is alleged to be fraudulent or deceptive in some manner. For example, paragraphs 54–61 of the Amended Complaint, which the plaintiff assert contain misleading statements, are quotations, some lengthy, from various parts of IFC's 1999 10–K but the plaintiff does not specifically identify the various

sentences in those quotations that he is alleging are misleading.

(1) Accounting Misrepresentations

■ The Amended Complaint alleges that the defendants violated § 10(b) and Rule 10(b)–5 by misrepresenting IFC's financial condition through accounting misfeasance and other violations of the Generally Accepted Accounting Principles (GAAP). The gist of the amended complaint's fraudulent accounting allegations is that IFC engaged in the systematic overstatement of its revenues. The Ninth Circuit recognizes that the overstating of revenues may state a claim for securities fraud because it is a violation of GAAP to recognize revenue before it is earned. *In re Daou Systems, Inc.*, 411 F.3d 1006, 1016 (9th Cir.2005). However, "a general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation." *Id.* at 1016.

(a) WIP

■ The plaintiff alleges in the Amended Complaint that IFC engaged in accounting fraud by manipulating its percentage of completion for works in progress (WIP) accounting method in order to materially overstate its revenues and estimated profits. The gist of this allegation is that IFC intentionally overestimated its unbilled contract costs in an early financial quarter and recorded those costs, together with estimated earnings, on the balance sheet as assets and operating income, in order to show a profit for that quarter, knowing that the overestimated revenue would have to be revised downward in a later financial quarter because much of the costs booked as revenue would end up being cost overruns for which IFC would not be reimbursed. As factual support for these allegations, the plaintiff relies on declarations from Ronald Hinkle, the chief financial officer for IFC's Engineering Group from December 1999 through March 2001 and from Bradley Thomas, the chief operating officer for the Engineering Group from September 1999 through April 2002. Both declarations state in effect, in general terms, that the WIP accounting procedure was manipulated in the Engineering Group in that expenses and estimated profits were systematically recognized as part of WIP regardless of whether the revenue could reasonably be expected to be collected.

■ Some of the defendants, in particular Joseph Kealy and Beiriger, argue that the Amended complaint does not sufficiently allege the particulars of this accounting fraud, *i.e.*, such "core information as what contracts were manipulated, how they were manipulated, who did it, and the amount of the financial overstatement." In the Ninth Circuit, the heightened PSLRA pleading standard for accounting fraud allegations is as follows:

When pleading irregularities in revenue recognition, plaintiffs should allege: (1) such basic details as the approximate amount by which revenues and earnings were overstated; (2) the products involved in the contingent transaction; (3) the dates of any of the transactions; or (4) the identities of any of the customers or company employees involved in the transaction. Plaintiffs need not allege each of these particular details, but they must allege enough information so that a court can discern whether the alleged GAAP violations were minor or technical in nature, or whether the constituted widespread and significant inflation of revenue. . . .

\* \* \* \* \* \*

The case law indicates, therefore, that although overstatement of revenues in violation of GAAP may support a plaintiff's claim of fraud, the plaintiff must show with particularity how the adjust-

ments affected the company's financial statements and whether they were material in light of the company's overall financial position.

*In re Daou Systems, Inc.,* 411 F.3d at 1016–17 and 1018 (internal quotation marks, brackets, and citations omitted.)

The Court concludes that the WIP-related allegations, while certainly alleging the type of systematic overstatement of revenue that can support a § 10(b)/Rule 10b–5 claim, *id.* at 1020, need to be pleaded with more particularity in two major areas in order to satisfy the PSLRA requirements. First, it is not clear from the Amended Complaint the extent to which the alleged WIP manipulations affected IFC's financial statements or IFC's overall financial position in that the Amended Complaint does not, for example, specify the discrepancy between the revenue IFC recognized on its books and the amount it was actually entitled to recognize under GAAP. Although the plaintiff asserts in his response that the chart in ¶ 69 of the Amended Complaint alleges the approximate amounts by which revenue was overstated, it is not clear to the Court that the chart actually does that; if that is the chart's purpose, the plaintiff needs to clarify it in the second amended complaint and specify the source of the information underlying the chart. Furthermore, the Hinkle and Thomas declarations are just too general in nature to satisfy the PSLRA's particularity requirement regarding the WIP allegations. Neither, for example, specify the amount of revenue that was improperly booked—Hinkle states that IFC's Engineering Group "regularly" booked significant revenues as WIP, "much" of which had to be subsequently adjusted downward, and that "many" of IFC's expenses turned out to be expenses with no accompanying revenue, and Thomas states that the Engineering Group "often" booked WIP even if a product had not yet been processed by quality control.

The Amended Complaint also does not specifically allege facts showing that any of the named defendants was responsible for the WIP manipulation. Rather than referring specifically to any named defendant, the relevant paragraphs of the Amended Complaint merely refer to "defendants" and "IFC" and other IFC employees who are not named defendants. The Thomas and Hinkle declarations do not supply the necessary facts either. Thomas refers to the "IFC management" as brutalizing the concept of WIP and that he raised his concerns with his unspecified "immediate management at IFC". Hinkle also refers to "IFC management" as being responsible for the booking of overly optimistic revenues estimates, and he only states that he expressed his view that the Engineering Group was booking excessive revenue to non-defendant Greg Hill.

(b) Tech Net State

■ The plaintiff also alleges in the Amended Complaint that IFC, in order to meet fourth quarter 1999 revenue projections, engaged in accounting fraud by booking a bogus $1.2 million equipment sale, representing over 15% of IFC's reported net income for 1999, even though knowing that the buyer, Tech Net, had already cancelled the order.

Although Joseph Kealy and Beiriger very briefly argue that the allegations about the cancelled Tech Net order do not meet the PSLRA requirements for alleging accounting fraud because the allegations fail to properly identify the required "who, what, where, why and how", they make no effort to discuss precisely what allegations are missing. The Court concludes that this incident of accounting fraud meets the PSLRA particularity requirements in that the Amended Complaint details, for example, which equipment order, the time frame, the amount

falsely booked, the percentage of that booking with regards to IFC's reported net income for 1999 and its impact on IFC's 1999 10–K, from whom the plaintiff obtained the information about the bogus booking, the roles that Joseph Kealy and Baumann personally played in ordering the bogus sale to be booked and their knowledge of the fraud involved, how the fraud was accomplished, and why the fraudulent booking was made.

Any deficiencies related to the Tech Net allegations are limited to the specific roles and knowledge of other defendants besides the two specified, and the fact that the internal monthly receivables reports referred to in the allegations are not properly documented. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230–31 (9th Cir.2004) ("We have held that a proper complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports as well as such facts as may indicate their reliability.") (Internal quotations omitted).

### (2) Omissions

 The plaintiff also specifically raises in the Amended Complaint three omissions by IFC that he alleges constitute undisclosed material facts relevant to IFC's financial status; he alleges had he known of these facts, he would never have traded his Anacom stock for IFC stock. "In order to be actionable under the [federal] securities laws, an omission must be misleading; in other words, it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir.2002). While Rule 10(b)–5 prohibits misleading and untrue statements, it does not contain a freestanding completeness requirement, *i.e.*, it does not prohibit statements that are merely incomplete or do not include all relevant facts. *Id.*

### (a) Velocita

 The Amended Complaint alleges that notwithstanding that IFC signed a $50 million contract with Velocita in December 1999, making Velocita its largest customer, IFC reported in its 1999 10–K that no one customer accounted for more than 10% of its revenues. The Amended Complaint also alleges that notwithstanding that the Velocita contract helped drive IFC's performance and growth predictions through the third quarter of 2000, IFC did not disclose until March 30, 2001, after the plaintiff's merger transaction had closed in February 2001, that Velocita had accounted for 54.6% of IFC's 2000 revenues. The Amended Complaint further alleges that IFC did not disclose until its November 2001 10–Q that 24% of its consolidated accounts receivable balance was owed by one unnamed company, and did not disclosed until February 2002 that the unnamed company was Velocita and that Velocita owed IFC $29 million that it would not pay.

Joseph Kealy and Beiriger argue that the Velocita-related allegations in the Amended Complaint are insufficient to plead an actionable omission because the allegations do not raise a reasonable inference that the 1999 10–K failed to properly disclose IFC's financial relationship with Velocita. The Court concurs, based on its understanding that the plaintiff's contention is that the extent of IFC's financial dependence on Velocita should have been disclosed to him prior to the execution of the merger agreement. The Velocita-related allegations are deficient due to the lack of specificity as to who knew what and when regarding IFC's alleged financial dependency on the Velocita contract; such allegations are required because the

PSLRA was enacted to eliminate the practice of pleading "fraud by hindsight." *In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d at 988; *accord, In re Daou Systems, Inc.,* 411 F.3d at 1021 The Amended Complaint does not set forth any facts showing that the statement in the 1999 10-K that no single customer accounted for more than 10% of IFC's 1999 revenues was then false—nowhere does the Amended Complaint allege that the Velocita contract, which was just signed in December 1999, produced any revenue for IFC in 1999. The Amended Complaint also does not allege any facts showing that any defendant knew the total percentage of 2000 revenue tied to Velocita, or of any problems with the Velocita contract, before the execution of the merger agreement and deliberately failed to inform the plaintiff of that fact.

The Velocita-related allegations are also insufficiently particular in that they do not specifically allege the involvement of any defendant except Joseph Kealy, and those allegations are not factually specific enough. The deficiencies related to Joseph Kealy are that the Amended Complaint only alleges that (1) Kealy stated in a press release of unspecified date that construction would begin on the Velocita contract as early as 30 days after mid-February 2001 and would continue throughout 2001, but there are no allegations that the construction did not begin in 2001, nor are any facts alleged that show that Kealy knew his statement was false when he made it, and (2) that Kealy stated to analysts in the summer of 2001 that IFC, unlike many of its competitors, was not exposed to risk from the mass failure of independent phone company customers, known as "CLECS". Other than stating that Velocita was a CLERC and that IFC disclosed on March 30, 2001 that Velocita accounted for 54.6% of IFC's revenue in 2000, the Amended Complaint does not allege facts showing that Kealy knew his statement was false when it was made.

(b) California Write–Off and Equipment Division Closing

■ The plaintiff briefly alleges in the Amended Complaint that in April 2001, some two months after the merger agreement was executed, IFC abruptly disclosed that it was setting aside a $2 million reserve for its California-based operations notwithstanding that IFC had not mentioned any problems with those operations in any of its previous public statements and that none of the defendants had mentioned any problems with those operations in any of their conversations with him.

The plaintiff further alleges that IFC also disclosed in April 2001 that it was disposing of its Equipment Distribution Division in order to free up working capital and that it was recording an operating charge of $19.6 million to account for the division's goodwill (which charge grew to $41.5 million by November 2001) notwithstanding that IFC had regularly reported increasing revenues for this division and had not previously disclosed any problems with it to the plaintiff.

The plaintiff's contention regarding these two omissions is that the true state of IFC's operational difficulties and the necessity for large write-offs were material facts that he, as a reasonable investor, would need to know before he sold his company for IFC stock.

Joseph Kealy and Beiriger argue, and the Court concurs, that these allegations are deficient under the PSLRA in that they improperly rest on an inference of fraud based solely on subsequent events. The Ninth Circuit has stated that it is "clearly insufficient" under the PLRA for a plaintiff to say that a "later, sobering revelation makes an earlier, cheerier statement a falsehood." *In re Read–Rite Corp.,*

335 F.3d 843, 846 (9th Cir.2003). The Amended Complaint does not specifically allege with the required great factual detail what any defendant knew prior to the February 2001 merger concerning any significant difficulties with the California operations or with the Equipment Division, or any facts showing that any defendant with such knowledge deliberately failed to timely inform the plaintiff of any such difficulties.

(3) Sufficiency of Allegations Linking Specific Defendants to Misrepresentations and Omissions

A common theme in the various motions to dismiss is that the Amended Complaint is insufficient in that it repeatedly uses such terms as "the defendants", "IFC", "the Company", and "IFC's management" in describing allegedly fraudulent, deceptive, and/or manipulative conduct rather than specifying which individual defendant or defendants committed the alleged misconduct. As previously noted, the Amended Complaint in fact only specifically links two of the defendants to particular alleged misrepresentations or omissions: Joseph Kealy (the Tech Net and Velocita allegations) and Baumann (the Tech Net allegation).

(a) Group Pleading Doctrine

The plaintiff relies in part on the "group pleading" or "group publishing" doctrine to support both the particularity and scienter aspects of the Amended Complaint. The Ninth Circuit has invoked the doctrine as a means of satisfying Fed.R.Civ.P. 9(b)'s requirement that the circumstances constituting fraud be pleaded with particularity. *In re GledFed. Inc. Securities Litigation,* 60 F.3d 591, 593 (9th Cir.1995) ("A plaintiff may satisfy Fed.R.Civ.P. 9(b) through reliance upon a presumption that the allegedly false and misleading 'group published information' complained of is the collective action of officers and directors.")

The Ninth Circuit has not, however, resolved the issue of whether the doctrine has survived the enactment of the PSLRA. While the Court believes that the better reasoned view is that the doctrine is no longer viable in light of the stringent pleading requirements of the PSLRA, *see e.g., Southland Securities Corp. v. INSpire Insurance Solutions, Inc.,* 365 F.3d 353, 364–65 (5th Cir.2004) (Court concluded that the "group pleading" doctrine conflicts with the PSLRA's specific requirement that untrue statements or omissions be set forth with particularity as to each defendant and with the PSLRA's requirement that scienter be pleaded with regard to each act or omission sufficient to give rise to a strong inference that each defendant acted with the required state of mind.); *accord, Alaska Electrical Pension Fund v. Adecco S.A.,* 371 F.Supp.2d 1203, 1220–21 (S.D.Cal.2005); *In re Syncor International Corp. Securities Litigation.* 327 F.Supp.2d 1149, 1171–72 (C.D.Cal. 2004), the Court need not definitively resolve that issue at this time.

■■■ Even if the "group pleading" doctrine can be applied to this action, the allegations of the Amended Complaint are insufficient to make the doctrine applicable to any of the four outside directors (all but Seminoff) that the plaintiff argues are covered by it. The Ninth Circuit has held that in order for a plaintiff to rely on the group published information presumption for Rule 9(b) purposes against an outside director defendant, the "complaint must contain allegations that an outside director either participated in the day-to-day corporate activities, or had a special relationship with the corporation, such as participation in preparing or communicating group information at particular times." *In re GlenFed,* 60 F.3d at 593.

The plaintiff argues that the group pleading doctrine applies to John Kealy,

Morbeck, Stephens, and Jensen through the "special relationship" factor. The plaintiff contends that John Kealy had the requisite special relationship with IFC merely because the Amended Complaint alleges that he is the brother of Joseph Kealy, IFC's CEO, and was a member of the board's compensation committee; the Amended Complaint does not specifically allege that John Kealy had any involvement in the preparation or communication of any group published information. Such limited allegations are not sufficient to invoke the presumption afforded by the doctrine even as to Rule 9(b)'s pleading requirement. *See In re Homestore.com, Inc. Securities Litigation,* 252 F.Supp.2d 1018, 1035 (C.D.Cal.2003) ("Plaintiff's reliance on the group published doctrine with respect to [defendant's general counsel] does not save it. Plaintiff has not pled with any specificity the nature of [the counsel's] 'participation in day-to-day activities' or that he had the requisite special relationship with the company. Being close to Tafeen [an executive vice-president] and Wolff [the CEO and chairman] simply is not enough.")

The plaintiff argues that Morbeck, Stephens, and Jensen had the requisite special relationship with IFC because the Amended Complaint alleges that they were members of the board's audit committee during the relevant time period. The Court disagrees given that the Ninth Circuit has rejected the argument that the presumption of the group pleading doctrine is applicable merely because a complaint, as does the Amended Complaint here, "identifies a corporation's outside directors, various committee assignments and generic responsibilities for every committee." *In re GlenFed,* 60 F.3d at 593. Furthermore, numerous district courts within the Ninth Circuit have held, in published opinions involving securities fraud claims, that audit committee membership is insufficient to make an outside director liable under the group pleading doctrine. *See e.g., Stack v. Lobo,* 903 F.Supp. 1361, 1376–77 (N.D.Ca.1995) ("Plaintiffs suggest that [two outside director defendants] are liable [for securities fraud] because they are the sole members of [the corporate defendant's] audit committee. This argument is unpersuasive. Mere membership on a corporate defendant's board of directors is insufficient to establish group published liability."); *In re Gupta Corporation Securities Litigation,* 900 F.Supp. 1217 (N.D.Ca.1994) (Same); *Haltman v. Aura Systems, Inc.,* 844 F.Supp. 544, 549 (C.D.Cal.1993) (In rejecting the plaintiffs' reliance on the group pleading presumption, the court stated: "Plaintiffs argue that [outside director] Reitman's membership on the Audit committee constitutes a special relationship with Aura that would indicate that he had direct or indirect control over the conduct of Aura's affairs. These allegations are insufficient because there are no allegations that Reitman's membership on the Audit Committee played a specific role in the creation of the allegedly false and misleading statements.... Reitman's status as a member of Aura's Audit Committee, in and of itself, is insufficient to link him to the alleged fraud.")

(b) Signing IFC's 1999 10–K

■ The plaintiff also argues that the Amended Complaint has sufficiently connected all of the defendants except Baumann to all of the alleged misrepresentations and omissions regardless of the group pleading doctrine because all of the defendants except Baumann signed IFC's allegedly false 1999 10–K. The Court agrees with the plaintiff that Joseph Kealy, IFC's CEO, and Beiriger, IFC's CFO, can be directly linked to sufficiently pleaded allegations of misrepresentations and omissions in the 1999 10–K through their signatures on the document. The Court

accepts the reasoning of those courts that, having rejected the group pleading doctrine in cases governed by the PSLRA, have concluded that an officer defendant can be held responsible for allegedly false corporate documents for PSLRA purposes if the complaint alleges specific facts linking the defendant to that document such as that the defendant signed the document. *See e.g. Southland Securities Corp. v. IN-Spire Ins. Solutions Inc.*, 365 F.3d at 365 ("[C]orporate documents that have no stated author or statements within documents not attributed to any individual may be charged to one or more corporate officers provided specific factual allegations link the individual to the statement at issue. Such specific facts tying a corporate officer to a statement would include a signature on the document or particular factual allegations explaining the individual's involvement in the formulation of either the entire document, or that specific portion of the document, containing the statement."); *In re Syncor International Corp. Securities Litigation*, 327 F.Supp.2d at 1172 ("A signature on an annual report sufficiently ties a corporate officer to a statement.") *Cf. Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1062 (9th Cir.2000) ("Court noted, although not in the context of PSLRA pleading requirements, that [k]ey corporate officers should not be allowed to make important false financial statements knowingly and recklessly, yet still shield themselves from liability to investors simply by failing to be involved in the preparation of those statements.")

The Court, however, concurs with the arguments of the outside directors that the Amended Complaint is insufficient to the extent that it alleges that their mere signatures on the 1999 10–K sufficiently links them to any misrepresentations and omissions contained in that form. The Court agrees with those courts that have concluded that an outside director's signature on an SEC-required corporate document is not enough, in and of itself, to sufficiently plead a securities fraud claim against that director. *Cf. Stack v. Lobo*, 903 F.Supp. at 1376 (In rejecting an argument that the signing of an allegedly false 10–K subjects an outside director to liability, the court stated: "[A]n outside director does not become liable for the contents of a group published document merely by signing it."); *In re Gupta Corporation Securities Litigation*, 900 F.Supp. at 1241 ("Two courts in this district have held that the mere fact that an outside director signed a group published document does not make the outside director liable for the contents of the document. In *In re Ross Sys. Sec. Litig.*, 1994 WL 583114 (N.D.Cal.1994), the court held that an outside director was not liable under the group published presumption where plaintiff's only specific allegation against the outside director was that the outside director had signed the defendant company's Form 10–K.")

D. Sufficiency of Allegations of Scienter

All of the defendants have moved to dismiss the Amended Complaint on the ground that it fails to meet the PSLRA's strict standard for alleging scienter.

(1) Stock Sales

■ The plaintiff alleges in the Amended Complaint that the fact that six of the eight moving defendants (all except outside directors Stephens and Morbeck) sold large blocks of their IFC stock during the first quarter of 2000, after fraudulently inflating the price of IFC's stock during the fourth quarter of 1999, is evidence of scienter. The defendants argue that the stock sale-related allegations in the Amended Complaint are insufficient to create the required strong inference of scienter. The Court agrees to the following extent.

■ The Ninth Circuit has made it clear that "[i]nsider stock sales are not inherently suspicious" for purposes of the PSLRA's scienter requirement. *In re Vantive Corp. Securities Litigation*, 283 F.3d 1079, 1092 (9th Cir.2002). As the Ninth Circuit has stated:

Although "unusual" or "suspicious" stock sales by corporate insiders may constitute circumstantial evidence of scienter, insider trading is suspicious only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information. Among the relevant factors to consider are: (1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history.

*In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d at 986 (Internal citations and some quotation marks omitted). The Court concludes that the Amended Complaint does not sufficiently allege any of the three relevant factors.

■ First, the Court cannot conclude that the allegations in the Amended Complaint pertaining to the percentage of stock sold by the defendants are sufficient to infer scienter because the Amended Complaint does not explain the background of those figures, *e.g.*, where the plaintiff obtained those figures and what they actually represent. Such information is vital because when evaluating stock sales for scienter purposes, "the proportion of shares actually sold by an insider to the volume of shares he could have sold is probative of whether the sale was unusual or suspicious[,]" *id.*, and in determining this proportion it is appropriate to consider an insider's stock shares plus that person's exercisable stock options in order to determine how much stock the insider had available to sell. *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d at 986–87; *Ronconi v. Larkin*, 253 F.3d at 435 n. 25. Based on SEC-filed reports submitted by some of the defendants, it appears that the plaintiff did not include excisable stock options in alleging his stock sales-related figures. If this is so, then the alleged figures have no probative value in determining whether the amount of stock sold is suspicious.

Second, the Court cannot conclude that the allegations in the Amended Complaint regarding the timing of the defendants' stock sales are sufficient to infer scienter. The main reason for this is that the Amended Complaint nowhere sets forth exactly when during the first quarter of 2000 the defendants' stock sales were made or the price at which the defendants' shares were sold. Without this information it cannot be determined whether the sales were calculated to maximize the defendants' personal benefits from undisclosed insider information, as they must in order to create an inference of scienter, given that the Amended Complaint states that the IFC stock price fluctuated during the first quarter of 2000 from a low of $7.03 to an all-time high of $38.25 per share. *See Ronconi*, 253 F.3d at 435 ("Court noted that no inference of scienter is created by the timing of an insider's stock sales when the insider "misses the boat" by selling stock significantly below the stock's peak price."); *accord, In re Vantive Corp. Securities Litigation*, 283 F.3d at 1093–94.

Third, the Court in any case concludes that the stock sales-related allegations in the Amended Complaint are insufficient to create the required strong inference of scienter because there are no allegations at all about any defendant's prior stock trading history. In determining whether scienter has been sufficiently alleged, the Ninth Circuit has refused to attribute any

significance to a defendant's stock sales if no prior trading history is alleged. *See Vantive,* at 1095 ("When a complaint fails to provide us with a meaningful trading history for purposes of comparison, we have been reluctant to attribute significance to the defendant's stock sales."); *Ronconi,* at 436 ("But even if we were to treat her trading as suspicious in amount and timing, the plaintiffs have not alleged sufficient trading history for us to conclude that her trading was dramatically out of line with prior trading practices.")

### (2) GAAP Violations

The Amended Complaint alleges scienter in part based on IFC's alleged violations of GAAP. The Ninth Circuit recognizes that "while scienter cannot be established by publishing inaccurate accounting figures, even when in violation of GAAP, significant violations of GAAP standards can provide evidence of scienter so long as they are pled with particularity." *In re Daou Systems, Inc.,* 411 F.3d at 1022; *accord, DSAM Global Value Fund v. Altris Software, Inc.,* 288 F.3d at 390.

 The Court concludes that the allegations in the Amended Complaint that Joseph Kealy and Baumann personally directed IFC officials to fraudulently book the bogus $1.2 million Tech Net sale knowing that the customer had already cancelled the purchase constitute facts giving rise to a strong inference that they acted with deliberate or conscious recklessness as to that transaction. *Daou,* at 1023 (Court noted that specific allegations that defendant executives actually directed the improper revenue recognition in violation of GAAP are probative of scienter.) However, the same cannot be said about Kealy and Baumann with regard to the other alleged GAAP violations, or about any of the other moving defendants with regard to any alleged GAAP violation given the lack of specific allegations about those defendants' personal involvement.

### (3) Obviousness of the Misconduct

 The Amended Complaint alleges in part that all of the defendants had knowledge of IFC's fraudulent and deceptive financial practices and manipulations because IFC's financial problems and shortage of cash flow were obvious within IFC by the end of 2000. The plaintiff attempts to link all of the defendants to IFC's problems by arguing that "[i]gnorance of the obvious is no defense." It is clear that the scienter requirement of "deliberately reckless or conscious misconduct" can be established under the PSLRA if a complaint adequately sets forth corroborating details and facts supporting allegations of each defendant's knowledge of problems adversely affecting corporate finances. *See No. 84 Employer–Teamster Joint Council Pension Trust Fund v. America West Holding Corp.,* 320 F.3d at 941–44; *see also, Nursing Home Pension Fund, Local 144 v. Oracle Corp.,* 380 F.3d at 1234 (Court concluded that scienter had been properly alleged in part because, based on admissions by the defendant officers that they were involved in every detail of the business, it was reasonable to infer that their "detail-oriented management style led them to become aware of the allegedly improper revenue recognition of such significant magnitude[.]") It is also clear, however, that broad allegations concerning the "obviousness" of the corporate financial problems do not meet the PSLRA's particularity requirement. The Ninth Circuit has, for example, stated that "[g]eneral allegations of defendants' 'hands-on' management style, their interaction with other officers and employees, their attendance at meetings, and their receipt of unspecified weekly or monthly reports are insufficient" to lead to a strong inference of scienter. *In re Daou Sys-*

*tems, Inc.,* 411 F.3d at 1022. It has also rejected the contention that "facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers", noting that while a reasonable inference may be raised that defendants would be aware of financial-related misrepresentations based on their job duties the PSLRA requires the pleading of facts giving rise to a strong inference, not merely a reasonable inference. *In re Read–Rite Corp.,* 335 F.3d at 848; *accord, Alaska Electrical Pension Fund v. Adecco S.A.,* 371 F.Supp.2d 1203, 1217 (S.D.Cal.2005) ("Plaintiffs' authority does not support a blanket assumption that individual director and officer defendants should be deemed to be aware of or participated in a fraud by virtue of their positions in the defendant company. In the cases Plaintiffs cite that are from the Ninth Circuit, the complaints alleged detailed information regarding meetings, letters, reports, or other documentation showing the individual defendants knew about the fraud.") *See also, In re Advanta Corp. Securities Litigation,* 180 F.3d 525, 539 (3rd Cir.1999) ("It is well established that a pleading of scienter may not rest on a bare inference that a defendant 'must have had' knowledge of the facts" by virtue of the defendant's position within the company.) (Some internal quotation marks omitted). *Cf., Rosenbloom v. Adams, Scott & Conway, Inc.,* 552 F.2d 1336, 1338–39 (9th Cir.1977) (Court, in discussing who was an "insider" for § 10(b) purposes, stated: "A director, officer, or even the president of a corporation often has superior knowledge and information, but neither the knowledge nor the information necessarily attaches to those positions. Knowledge and access to inside information do not always follow titles on an organizational chart[.]")

The plaintiff's "obviousness" argument relies in part on allegations in the Amended Complaint, particularly with reference to the bogus Tech Net sale, that scienter is established based on IFC's internal reports such as its monthly receivable reports. Mere allegations that such internal corporate reports existed do not support a strong inference of scienter. The Ninth Circuit has made it clear that before a plaintiff can rely on the existence of internal reports as a means of establishing scienter, the complaint must allege such corroborating details as the source of the plaintiff's information with respect to the report, how the plaintiff learned of the report, who drafted the report, an adequate description of the contents of the report, and which officers received the report. *In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d at 985; *accord, In re Vantive Corp. Securities Litigation,* 283 F.3d at 1087–88. The Amended Complaint fails to include such allegations; it does not, for example, allege which of the defendants received internal reports concerning the Tech Net bogus sale.

(4) Signing the 1999 10–K

The plaintiff also argues that the signing of the 1999 10–K not only links all of the defendants except Baumann to the allegedly false statements in the report, but the signatures demonstrate the reckless intent to defraud necessary for scienter.

■ The Court agrees that the Amended Complaint sufficiently alleges scienter as to Joseph Kealy because it alleges that he both signed the allegedly fraudulent 1999 10–K and that he did so knowing it was an incorrect statement of IFC's finances given his personal knowledge of the improper booking of the bogus $1.2 million Tech Net sale.

■ The Court cannot, however, conclude the same about the other defendants, especially the outside director defendants. In his response, the plaintiff

argues that it would "defy credulity" for the outside directors, especially the three (Stephens, Jensen, and Morbeck) who served on the board audit committee, to argue that they did not know about the accounting fraud given the allegations about how widespread and widely known the accounting fraud was within IFC and the allegations about the existence of monthly receivable reports. Scienter for PSLRA purposes, however, cannot rest on speculation. *In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d at 985 ("It is not enough for [the plaintiff] to state facts giving rise to a mere speculative inference, or even a reasonable inference of deliberate recklessness.") What is missing from the Amended Complaint regarding the outside directors' scienter are factual allegations setting forth what information was presented to the outside directors about any of the alleged misrepresentations, omissions, GAAP violations, etc. that put them on actual or constructive notice of fraudulent activity, *e.g,* facts such as what the audit committee's role was, how many board meetings each outside director attended, when they attended them, what information or reports were provided to them concerning IFC's financial affairs, the contents of such information, etc. *See e.g., In re Enron Corp. Securities, Derivative & ERISA Litigation,* 258 F.Supp.2d 576, 627–28 (S.D.Tex.2003) (Court dismissed § 10(b) claims for lack of sufficient scienter allegations against outside directors who were members of key board committees notwithstanding that they had signed allegedly false 10–Ks and other SEC-required documents, stating: "[T]he references in the minutes [of board meetings alleged in the complaint] to various entities, transactions and problems are merely brief allusions or lists of topics touched on, presented and/or discussed during the meetings, but no particular facts or details about the presentation or discussion

are recited that would indicate that the Outside Directors knew or recklessly disregarded that there was a Ponzi scheme afoot or that would suggest that their resolutions as members of the board or committees were intended to further fraud. At most they might suggest [non-§ 10(b) actionable] negligent failure to ask more questions or investigate the corporation's affairs in greater depth."); *In re Sunbeam Securities Litigation,* 89 F.Supp.2d 1326, 1341–42 (S.D.Fla.1999) (Court, in dismissing a § 10(b) action against two outside directors, found that the complaint's conclusory allegations that their membership on the audit committee raised a strong inference that they acted with the requisite scienter with regard to SEC filings and group published statements to be insufficient as a matter of law: "Of particular import to this Court's determination is the Complaint's complete lack of any particularized allegations of scienter on the part of the Audit Committee members.")

### E. Sufficiency of Allegations of Causation

Defendant Baumann, in a very cursory manner without citation to any case law, argues that the Amended Complaint should be dismissed because it is "completely silent on loss causation." The issue of whether or not the Amended Complaint sufficiently alleged loss causation under the Ninth Circuit's pleading standard in effect at the time the Amended Complaint was filed is now irrelevant since the Supreme Court subsequently invalidated that standard. *Dura Pharmaceuticals, Inc. v. Broudo,* —— U.S. ——, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). The second amended complaint shall specifically plead loss causation in accordance with the *Dura* requirements.

*Count II*

■■ Count II of the Amended Complaint alleges that the fraudulent and deceptive conduct of the inside director defendants and the officer defendants violated § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a).[5] In order to state a claim under § 20(a), the plaintiff must sufficiently allege (1) a primary violation of federal securities law, and (2) that the defendant exercised actual power or control over the primary violator. *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d at 945.

Joseph Kealy and Beiriger, correctly noting that secondary liability as a controlling person cannot exist without a primary violation, *see Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir.1999) ("To be liable under section 20(a), the defendants must be liable under another section of the Exchange Act.") (footnote omitted), very briefly argue in their motion to dismiss that the § 20(a) claim must be dismissed because the plaintiff has not properly alleged a primary violation under Rule 10b–5; they do not argue that they are not control persons for purposes of § 20(a). Baumann very briefly argues in his motion that the Amended Complaint does not properly plead that he was a control person.

The Court concludes that it need not resolve any controlling person-related issues given that it is requiring the plaintiff to file a second amended complaint pleading his primary federal and state liability violation claims with more particularity.

*Count V*

■■ Count V of the Amended Complaint alleges, pursuant to Arizona common law, that the outside director defendants aided and abetted the violation of A.R.S. § 44–1991 by the other defendants. Such a claim requires (1) the occurrence of a primary securities fraud violation, (2) knowledge of or a duty of inquiry with regard to the primary violation by the person charged, and (3) a necessary contribution to the underlying scheme by the person charged. *State v. Superior Court of Maricopa County*, 123 Ariz. 324, 331, 599 P.2d 777, 784 (Ariz. 1979), *overruled on other grounds by State v. Gunnison*, 127 Ariz. 110, 618 P.2d 604 (1980).

The Court also concludes that it need not resolve the arguments of Jensen, Morbeck, Seminoff, and Stephens that the Amended Complaint fails to state an aiding and abetting claim given its requirement that the plaintiff file a second amended complaint.

The Court will note, however, that it cannot not accept Jensen and Morbeck's argument that such aiding and abetting liability should no longer be recognized in Arizona. Although they may be correct that the Supreme Court's reasoning in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (holding that a private plaintiff is not entitled to maintain an aiding and abetting action under § 10(b) or Rule 10b–5), should be adopted in Arizona, the Arizona Supreme Court's recognition in 1979 of a private right of action for aiding and abetting in the *State v. Superior Court* case stands as the law currently controlling this issue.

**5.** Count IV of the Amended Complaint alleges a similar claim pursuant to A.R.S. § 44–1999, the Arizona equivalent of a § 20(a) claim. As with Count III, the Court will not separately discuss Count IV since the parties agree that the resolution of Count II governs the resolution of Count IV.

*Count VI*

Count VI of the Amended Complaint alleges a common law fraud claim solely against Joseph Kealy. There is no issue before the Court as to the validity of this claim because, as the plaintiff points out, Kealy has not specifically raised any argument in his memoranda as to why the allegations associated with this count do not state a claim against him. Inexplicably, Kealy in fact states in his motion to dismiss that he is named as a defendant in only Counts I–IV and VII–VIII and that the Amended Complaint does not have a Count VI.

*Count VII*

■ Count VII of the amended complaint alleges a negligent misrepresentation claim solely against Joseph Kealy stemming from his alleged misrepresentations concerning IFC's financial condition and future prospects. Notwithstanding that Arizona recognizes a tort claim for negligent misrepresentation as set forth in Restatement (Second) of Torts § 552, Kealy argues, and the Court agrees, that the negligent misrepresentation claim is barred as a matter of law by Arizona's economic loss rule because it is in essence based on alleged non-performance under the Merger Agreement and is thus in reality a breach of contract claim masked as a tort claim.[6]

■ Under the economic loss rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort and is limited to recovery under contract law. *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir.1995); *Carstens v. City of Phoenix*, 206 Ariz. 123, 125, 75 P.3d 1081, 1083 (Ariz.App.2003). As the plaintiff concedes, the Ninth Circuit, noting that the Arizona Supreme Court interprets the economic loss rule broadly, has concluded that the Arizona Supreme Court would not except negligent misrepresentation claims from the economic loss rule. *Apollo Group*, 58 F.3d at 480.

The plaintiff argues, however, that the economic loss rule does not mandate the dismissal of his negligent misrepresentation claim because an exception to the rule allows negligent misrepresentation claims by third parties against defendants with whom they are not in contractual privity, as he is not with Joseph Kealy. The plaintiff's contention is based on a footnote in the *Apollo Group* case wherein the Ninth Circuit mentioned two cases in which it noted the Arizona Supreme Court had permitted plaintiffs to sue for economic loss in negligent misrepresentation and distinguished both on the ground that they "involved suits by third parties against defendants with whom they were not in contractual privity. This lack of privity limited the contractual remedies available to plaintiffs, rendering commercial law an inadequate framework in which to resolve plaintiffs' claims. By contrast, here the parties' relationship is clearly governed by the law of contract." 58 F.3d at 480 n. 4.

■ While the plaintiff's position regarding the *Apollo Group* exception is not

---

6. Although not specifically alleged as part of this count, the Court notes that the Amended Complaint does allege that the alleged misrepresentations and omissions violated the Merger Agreement in that Article 3 of the Merger Agreement warranted (a) that all of IFC's SEC filings before 2/9/01 "true correct and complete", (b) that IFC's 1995–1999 10–Ks "fairly and accurately presented" IFCs then financial position in conformity with GAAP, (c) that IFC's 10–Ks for the first three quarters of 2000 fairly and accurately presented IFC's financial position in all material respects, and (d) that the Merger Agreement and other written documents furnished to the plaintiff in the merger transactions, including financial statements, did not contain any untrue statements of a material fact or omit to state a material fact.

without some support in the case law, *see e.g., Southwest Pet Products, Inc. v. Koch Industries, Inc.,* 89 F.Supp.2d 1115, 1128 (D.Ariz.2000), *rev'd in part on other grounds,* 32 Fed.Appx. 213 (9th Cir.2002) (Court declined to dismiss a negligent misrepresentation claim under the economic loss rule, concluding from the *Apollo Group* case's exception for cases brought by plaintiffs not in contractual privity with the defendants, that "the economic loss doctrine should not, as a matter of law, be invoked to bar a properly pled claim for negligent misrepresentation or fraudulent conduct."), the Court agrees with Kealy that *Carstens v. City of Phoenix,* a more recent Arizona Court of Appeals case, makes it clear that contractual privity is not required under Arizona law for the economic loss rule to apply. As the *Carstens* court stated:

> Contrary to the Carstens' characterization, Arizona courts have never held that the application of the economic loss rule depends upon the plaintiff also having a viable contract claim against the defendant. Instead, irrespective of a plaintiff's contractual claims against a defendant, the rule bars recovery of economic damages in tort because such damages are not cognizable in tort absent actual injury. In this case, because the Carstens allege purely economic losses, their damages sound in contract, and, presumably, may be asserted against those defendants with whom the Carstens are in privity. Thus, the rule does not prevent the Carstens from recovering their economic losses, but merely restricts them to suits against those defendants actually liable in contract.

206 Ariz. at 127, 75 P.3d at 1085.

*Count VIII*

■■■■■■ Count VIII of the Amended Complaint alleges an Arizona common law civil conspiracy claim against the inside director defendants and the officer defendants. While Arizona does not recognize a civil action for conspiracy, it does recognize "an action for damages caused by acts committed pursuant to a conspiracy." *Estate of Hernandez v. Flavio,* 187 Ariz. 506, 510, 930 P.2d 1309, 1313 (1997). Liability for civil conspiracy requires that "two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002).

■■■■ Joseph Kealy and Beiriger argue that the Amended Complaint fails to state a civil conspiracy claim for two reasons, the first of which is because the amended complaint fails to properly plead an underlying tort under the Arizona Securities Act. *Cf. Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris Inc.,* 185 F.3d 957, 969 (9th Cir. 1999), *cert. denied,* 528 U.S. 1075, 120 S.Ct. 789, 145 L.Ed.2d 666 (2000) (The Court concluded that because the fraud claims underlying the civil conspiracy claim failed, the conspiracy claim also failed.) This issue is resolved by the requirement that the plaintiff must file a second amended complaint stating the securities fraud claims with more particularity.

Kealy and Beiriger also argue that the conspiracy claim is defective because the Amended Complaint, rather than pleading facts that, if true, would establish an actual conspiratorial agreement, merely alleges conclusions that the named defendants conspired together, *i.e.* that no allegations are made that meetings were held between the named defendants or that there was any quid pro quo between the named defendants. The plaintiff's contention is that the necessary conspiratorial agreement is demonstrated by the alleged actions of the conspirators "in jointly signing the 1999

10–K and pumping up the stock price." While the Court believes that the Amended Complaint sufficiently alleges an agreement between Joseph Kealy and Baumann to book the bogus Tech Net sale, the Court cannot agree that the Amended Complaint sufficiently alleges a conspiratorial agreement among the other defendants named in this count. *See e.g., Southern Union Co. v. Southwest Gas Corp.*, 165 F.Supp.2d 1010, 1021 (D.Ariz. 2001) ("Although an express agreement need not be shown for a plaintiff to prevail on a civil conspiracy claim, there must be at least a tacit understanding. The existence of a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. However, a plaintiff must allege specific facts which support the inference of an agreement.") (Internal citations and quotation marks omitted). The plaintiff does not cite to any case law holding that the mere signing of SEC-filed documents constitutes an agreement to defraud. *See Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, 1521 (N.D.Cal.1990) (Court, noting that "[i]t is not enough to show that defendants might have a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement", concluded that the plaintiff failed to allege a conspiratorial agreement in a securities fraud case notwithstanding that the complaint alleged the defendants' participation in issuing allegedly false financial statements, that some of the defendants signed some of the contested documents, that some of the defendants participated in the issuance of misleading statements, and that some of the defendants sold stock during the relevant time period.)

*Second Amended Complaint*

 Although the plaintiff inexplicably fails to request leave to file a second amended complaint in the event that any of the motions to dismiss are granted, the Court concludes that there is no reason not to permit such an amendment. In the Ninth Circuit, the policy of Fed.R.Civ.P 15(a) that leave to amend should be freely given when justice so requires is to be applied "with extreme liberality" and dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint cannot be saved by amendment. *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d at 1051–52. As the Ninth Circuit has stated, the "[a]dherence to these principles is especially important in the context of the PSLRA" due to the unprecedented degree of specificity and detail required under the PSLRA standard, and that the courts "need to bear in mind that [they] are not operating in the world of notice pleading. In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error." *Id.* at 1052.

Nothing has been presented to the Court in connection with the motions to dismiss that in any way convinces it that it would be an exercise in futility to permit the plaintiff another opportunity to present amended federal and state securities fraud claims against the named defendants. The Court believes that continuation of this action is in fact very much justified because the evidence and arguments presented to date by the plaintiff, if established to be true at trial, could permit a trier of fact to conclude that the defendants' participation in the fraudulent overinflation of IFC's financial health materially contributed to the plaintiff ultimately having received nothing in return for IFC's acquisition of his business. That said, however, the plaintiff is advised to heed the Court's statements regarding the pleading deficiencies in the Amended Complaint because the failure of his second amended complaint to comply with the stringent pleading requirements for federal and Ari-

zona securities fraud claims may lead to the dismissal of those claims regardless of their seriousness.

Therefore,

IT IS ORDERED that Defendants C. James Jensen's and John P. Morbeck's Motion to Dismiss Counts I, III, and V of the Amended Complaint (doc. # 68), the Motion to Dismiss Amended Complaint on Behalf of Defendants Richard J. Seminoff and John P. Stephens (doc. # 69), Defendant John F. Kealy's Motion to Dismiss Plaintiffs' [sic] Amended Complaint (doc. # 71), the Motion to Dismiss by Defendants Joseph P. Kealy and Terry W. Beiriger (doc. # 74), and Defendant Anthony T. Baumann's Separate Motion to Dismiss (doc. # 75), and joinders therein, are all granted and that the Amended Complaint is dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(6).

IT IS FURTHER ORDERED that the plaintiff shall file a second amended complaint in compliance with this Order no later than December 19, 2005.